SAMUEL HUTCHINS & others *vs.* CALVIN SHAW.

A house built by one person upon the land and partly with the materials of another, with an agreement that upon payment of a specified sum by the builder, for the land and materials, the owner shall convey the house and land to him, is not the personal estate of the builder, but the real estate of the owner of the land

THIS was a writ of entry to recover a lot of land, with a dwelling-house thereon, in Chicopee, and was submitted to the court upon the following agreed statement of facts:—

The tenant did not deny the right of the demandants to recover possession of the land, but he claimed the right to hold and remove the house as personal property

In the spring of 1847, one Chapin being then the owner in fee of the land demanded, and having on hand a quantity of unsalable lumber, Shaw, the defendant, who was a carpenter, proposed to Chapin to construct a house with the same on the lot in question.

It was thereupon agreed verbally between Shaw and Chapin, that the former should put in a cellar on the lot, and should take the timber above mentioned, and with the same and other lumber to be furnished by Chapin, sufficient for the purpose, should erect a house on the premises; Shaw furnishing every thing but the lumber, and Chapin to hold the property until Shaw should pay for the lumber and the land. On the payment by Shaw of $130, which was the agreed price for the lumber and land, Chapin was to give Shaw a deed of the land. At the same time, Chapin told Shaw, that he might want work of him, and if so, the work should go towards the payment for the lumber. In pursuance of this arrangement, Shaw commenced the erection of a house on the 1st of May, 1847, and completed it in October, 1848, and occupied the same from September, 1847. Chapin furnished nearly all the lumber, and a portion of the other materials, and paid for a part of the labor on the house; the latter in consequence of the unwillingness of some of the workmen to go on with the work, unless Chapin would become responsible for the payment of their bills, which he did. The amounts of the lumber used in the house, and of the bills paid by Chapin, were charged by him to Shaw, from time to time, for the purpose, as stated by the former, of seeing " how much the expense of the house was, and in expectation that Shaw would fulfil his agreement by paying the amount due and taking the property." Shaw worked for Chapin at various times during the years 1847 and 1848, but not to an amount sufficient to pay for the lumber; and there had never been any settlement between the parties.

On the 2d of September, 1848, Chapin mortgaged the premises, with several other parcels of real estate, to the demandants, to secure a debt of $4000 due from him to them; they having no knowledge, at the time, of the transactions above stated, between Shaw and Chapin.

In January, 1849, Chapin became insolvent, and on the 8th of November following the property in question was sold by his assignee, under an order of the master on the application of the mortgagees, and was purchased by the demandants for the sum of $525, which was applied towards their mortgage debt. At the time of the sale, the assignee stated, that Shaw made some claim to the house; that he gave no opinion as to the validity of the claim, and should not warrant the title; that he should sell whatever interest Chapin had in the property.

On the 5th of November, 1849, Shaw called on the assignee and stated, that if he would make out a deed of the premises to him, he was ready to pay the remainder of Chapin's bill; but no definite sum was mentioned, and no tender of money was made. The assignee declined fulfilling any contract of Chapin's.

It was also agreed, that the mortgage debt had not been paid in full, and would not be so, by the dividend on Chapin's estate, and that the full value of the demanded premises would not cancel the same. The annual value of the house and land was $100; that of the land alone $10.

*J. Wells*, for the tenant, cited *Beers* v. *St. John*, 16 Conn. 322; *Penton* v. *Robart*, 2 East, 88; *Van Ness* v. *Pacard*, 2 Peters, 137; Amos & F. on Fixt. 53, 59; *Gaffield* v. *Hapgood*, 17 Pick. 192; *Barnes* v. *Barnes*, 6 Verm. 387; *Ashmun* v. *Williams*, 8 Pick. 402; *Doty* v. *Gorham*, 5 Pick. 487; *Osgood* v. *Howard*, 6 Greenl. 452; *Hilborne* v. *Brown*, 3 Fairf. 162; *Jewet* v. *Patridge*, 3 Fairf. 243; *Russell* v. *Richards*, 1 Fairf. 429; *Harris* v. *Gillingham*, 6 N. H. 9; *Aldrich* v. *Parsons*, 6 N. H. 555; *Stillman* v. *Hamar*, 7 How. Miss. 421; *Raymond* v. *White*, 7 Cow. 319; *Taylor* v. *Townsend*, 8 Mass. 411, 416; *Wells* v. *Bannister*, 4 Mass. 514; *Brown* v. *King*, 5 Met. 173; *Saunders* v. *Robinson*, 7 Met. 310, 315.

*R. A. Chapman*, for the demandants, cited *Thompson* v. *Gould*, 20 Pick. 134; *Barnard* v. *Poor*, 21 Pick. 378; *Kemble* v. *Dresser*, 1 Met. 271; *Pierce* v. *Goddard*, 22 Pick. 559; 2 Kent, 361, 362; *Milton* v. *Colby*, 5 Met. 78.

BY THE COURT. The court can perceive no ground on which to hold that Shaw had any title to the house as per-

sonal property. It was built on Chapin's land; the labor and materials were partly furnished by Chapin, under an agreement with Shaw, to have the house by a regular deed of conveyance, when the land and materials should be paid for. The estate must of course remain Chapin's, until paid for and conveyed according to the agreement. It is stated that the timber was charged by Chapin to Shaw on book; but this is no evidence of a sale for a money price, which changed the property in the timber, but a memorandum to show what Shaw must pay, according to the agreement, to entitle himself to a conveyance.

The house, as well as the land, thus appearing to belong to the demandants, they are entitled to mesne profits, at $100 a year, the rate agreed upon.