## AMOS SAWYER & another *vs.* YALE IRON WORKS.

Hampshire. Sept. 22, 1874. — Jan. 6, 1875. MORTON & ENDICOTT, JJ., absent.

The certificate of the presiding judge, disallowing a bill of exceptions, is *primâ facie* evidence that it is not conformable to the truth.

Upon the return of the report of a commissioner, to whom a petition to establish the truth of exceptions has been referred, the question whether the truth of exceptions is established is a question of law to be decided by the court.

An exception, not taken at the trial and seasonably presented in writing to the presiding judge, cannot be considered by this court upon a petition to establish the truth of exceptions.

If an exception alleged does not state the ruling excepted to, and the evidence to which it applied, with substantial accuracy, so as to present the same question and in the same aspect to this court as to the court below, the petitioner is not entitled to be heard in this court upon the exception, either in the form in which it was, or in that in which it appears that it should have been, tendered to the presiding judge.

When a bill of exceptions is disallowed by the judge presiding at the trial, the right of the excepting party to prove some of the exceptions and to waive others is limited to the case where the exceptions are wholly distinct from each other; and if the true and false statements are intermingled in the exceptions as tendered, the presiding judge may properly disallow the whole bill of exceptions as not conformable to the truth.

When evidence offered to prove a fact is excluded by the presiding judge, and afterwards admitted only for the purpose of contradicting a witness who had previously been examined upon the subject, a bill of exceptions, which states that the evidence was offered and admitted for the purpose of proving the fact, may be disallowed as not conformable to the truth.

A bill of exceptions tendered stated that the judge refused to rule, that, under circumstances specified, there was no implication that a fixture was personal property; the implication, if any, was that it became real estate. The judge did actually rule that the circumstances did not authorize the implication either that it was personal property or that it was real estate. *Held*, that the exception was rightly disallowed.

Where one series of requests for instructions, intermingling two subjects, is presented to the judge just before he charges the jury, a bill of exceptions to his rulings upon the whole series, which does not truly state the requests and rulings as to one of these subjects, may be wholly disallowed.

---

PETITION to establish the truth of exceptions alleged by Amos Sawyer and Theodore Clapp in an action brought against them by the Yale Iron Works, and disallowed by *Wilkinson,* J., who presided at the trial in the Superior Court.

The petition was referred by this court to a commissioner, to hear the parties and report his findings.

The bill of exceptions, as tendered by the petitioners, was as follows; the words printed in italics and not in brackets being those which the commissioner reported should be stricken out; the words printed in brackets being those which the commissioner reported should be inserted, except the letters and figures prefixed to the instructions, which are here added for convenience of reference to the commissioner's report as stated below; and the words printed in italics and inclosed in brackets being those found by the commissioner to have been in the requests as presented to the judge at the trial, as to which the commissioner reported that no exceptions ought to be allowed:

" Action of trover to recover the value of a steam boiler. The boiler was bought by Jonathan E. Janes, and was set in brick previously to April 18, 1871, in a building built by him on land of Lowell E. Janes, his father. It was set in such manner that it could not be removed without taking down the brick, and was so placed to be used as a part of a steam saw-mill in said building.

" Jonathan E. Janes testified that there was no agreement between him and his father in regard to putting either said building or boiler on his father's land; that he was an only child, living separate from his father, but in the same house, and then expected eventually to own the land. [He further testified to circumstances and acts which the plaintiffs claimed tended to show that the building and boiler were so placed on the land of the father with the father's permission and consent, and under an understanding that the same continued the property of Jonathan E. Janes, and was subject to removal.]

" On April 17, 1871, Lowell E. Janes executed a mortgage of this real estate, on which said mill and boiler then was, to the Haydenville Savings Bank, without special mention of anything on the land, but with a covenant that the premises were free of incumbrances. Jonathan E. testified that he procured the loan

from the savings bank, was present when said mortgage was executed, and that his father gave said mortgage at his request and to raise money for putting in said mill and machinery.

" There was evidence tending to show that in May, 1871, Jonathan E. set a steam-engine in said mill, on brick, and bolted down, which engine he bought of the plaintiff.

" On September 14, 1871, he mortgaged said engine and boiler to the plaintiff as personal property, by a mortgage not under seal, to secure the price of the engine. This mortgage was recorded in the town clerk's office, and notice of foreclosure given on December 18, 1871. The plaintiff claimed title to the boiler by virtue of said mortgage and foreclosure.

" On December 20, 1871, Jonathan E. Janes went into bankruptcy. On February 10, 1872, Lowell E. Janes also went into bankruptcy. The defendant Clapp was duly appointed assignee of both estates. On March 17, 1872, Lowell E. Janes died. In June, 1872, the assignee sold said boiler to Sawyer, the other defendant, by whom the same was disannexed and removed.

" The treasurer of the savings bank testified that the sale of the boiler was without the consent of the bank ; that the bank [had not made any claim and] did not relinquish any rights, *but should maintain its rights* under the mortgage ; that the bank had no knowledge of any understanding between the father and son about the boiler *or mill* [and engine].

" *The plaintiff offered evidence that Jonathan E. had mortgaged other machinery in the mill to other parties, as personal property. The defendants objecting, the court admitted the evidence for the purpose of showing that Jonathan E. had treated the machinery by him put in the mill as his personal property.* [The plaintiff offered in evidence other mortgages of other machinery in said mill, given by Jonathan E. Janes to other parties, as personal property ; and, upon the defendants objecting, they were excluded. Jonathan E. Janes having sworn that there was no agreement with his father about putting this property upon the real estate, he was recalled, and asked if he had not made written declarations to other parties that this property was personal property and contradictory to his statement, and he said he had not. The plaintiff then offered the mortgages, and they were admitted for the purpose of contradicting Jonathan E. Janes.]

" The defendants contended that the savings bank had the right to the possession of said boiler, and asked the court to instruct the jury as follows :

[A. 9.] " If the boiler was so annexed to the real estate in the first instance as to be the personal property of Jonathan E., yet if he agreed that the father might mortgage it to the savings bank, or if he was present, acting with or for his father in giving said mortgage of the land upon which was the mill and boiler, the boiler would pass with the land, and the defendants may avail themselves in this action of the savings bank title.

[B. 1.] " [If the savings bank had a mortgage due and unpaid of the real estate on which the boiler was set in bricks to operate a mill there, the boiler would pass with the real estate, and the bank would have the right to the possession thereof.]

, [B. 2.] "*Where an only child set a boiler in brick on the land of his father, without any understanding between father and son other than such as arose from their relations, there is no implication that the boiler was the personal property of the son; the im·plication, if any, is that it becomes real estate.*

[A. 1.] "*Aside from any agreement to the contrary, the boiler was so attached to the land [of the father] as to become part of the realty. [In other words, if the boiler had been placed and affixed in the manner it was by Lowell E. Janes himself, and for himself, or if it had been so placed and affixed by him or for his benefit, it would be part of the realty, and pass by his deed to the savings bank, whether that deed was executed and delivered before or after the boiler was so annexed.]*

[A. 2.] " *To show that it remained personal property of [that might be mortgaged by] the son, the jury must be satisfied that there was an agreement, express or implied, between father and son, that when the boiler was annexed to the realty [of the father], it should [not become part of it, but still] remain the property of the son.*

[A. 3.] " *Such agreement [between father and son] must be made before or at the time the boiler was so annexed.*

[A. 4.] " *The giving of a mortgage [or mortgages] by the son is no evidence of such [assent and] agreement on the part of the father, unless the father had notice or knowledge of such mortgage. [And the mere record of the mortgage or mortgages is not evidence of such knowledge or notice.]*

[A. 5.] " *The sale and removal of the boiler by the [defendant Clapp as] assignee is not evidence of an understanding [or agreement] between the father and son [at the time the boiler was annexed or before] that it should remain personal property.*

[A. 6.] " If there was such understanding [and agreement] between the father and son, nevertheless the boiler was so annexed to the land as to pass by the mortgage to the savings bank, unless the bank has had notice or knowledge of such [understanding or] agreement [before or] when it took said mortgage. [And there is not only no evidence that it had such knowledge or notice, but evidence that it had not.]

[A. 7.] " *The plaintiff must recover upon the strength of its own title. [And it has shown that the savings bank has a better title.]*

[A. 8.] It being in evidence that the savings bank [relinquishes no right acquired under the mortgage, but] intends to *maintain* [insist upon] *all* its rights under the mortgage, the defendants are liable [if at all] to the savings bank, and not to the plaintiff.

" The judge declined thus to instruct the jury ; *and instructed them that the sole question was whether there was an understanding between the father and son that the boiler, when annexed to the realty, should remain the property of the son ; and if there was such understanding, the mortgage to the savings bank would be no defence, and the plaintiff could recover the value of the boiler in this action ;* [and, after instructing the jury as to the conditions and circumstances under which this property would be real estate or personal property, in a manner not excepted to, ruled that the question whether it was real estate or personal property must be determined by what took place before or at the time it was put upon the land, and that nothing had transpired since which could be considered by the jury as affecting this question ; that the fact that the property was afterwards mortgaged to the savings bank, without anything being said as to this boiler and engine not being real estate, would not be a bar to the plaintiff's recovery, but that the plaintiff might now come forward and show that when the mortgage was made it was personal property and not real estate ; that the defendants could not interpose the bank title as a bar to the plaintiff's claim.]

["The defendants asked the court to rule that when an only child, upon land of his father, sets a boiler in brick to operate machinery there, without any understanding between the father and son other than such as arises from their relations, there is no implication that the boiler remained the personal property of the son ; but the implication, if any, is that it becomes realty. But the court declined so to rule ; and ruled that the fact that Jonathan E. Janes was an only son of Lowell E. Janes, and lived in the same house with his father, did not authorize the implication that this property in question was personal property when put upon the land, nor did it authorize the implication that it was to be real estate.]

" The jury returned a verdict for the plaintiff. To which rulings the defendants except, and pray that their exceptions may be allowed."

The commissioner's report, after specifying the alterations to be made in the statement of the evidence in the bill of exceptions, proceeded as follows :

" I further find that the defendants' counsel handed the judge who presided at the trial, as he arose to charge the jury, certain written requests for instructions, being those marked A. 1, 2, 3, 4, 5, 6, 7, 8 and 9. The judge stated, in substance, that he could not stop then to read them, but that he would consider them as handed in, and would charge the jury, and if there were any matters not covered by the charge, his attention could be called to them. The counsel for the defendants then called his attention generally to their requests by reading to him portions of them. The counsel for the defendants did not understand, as the matter was then left, that they were to call the attention of the judge again to their requests, in order to save their clients' rights in reference to the matters contained in the requests, in case the judge should not instruct the jury as requested.

" The judge instructed the jury as to the conditions and circumstances under which this property in question would be real estate or personal property. He ruled that, *prima facie*, it would go with the land ; but if it was put on the land by the son, with the knowledge and consent of the father, under an agreement, express or implied, that the same should remain the personal property of Jonathan E. Janes, and that Jonathan E. Janes

might remove the same at his pleasure, then it would not go with the real estate, but would remain the property of Jonathan E. Janes; that the question whether it was real estate or personal property must be determined by what took place before or at the time it was put upon the land, and that nothing had transpired since which could be considered by the jury as affecting this question; that the fact that the property was afterwards mortgaged to the savings bank without anything being said as to the boiler and engine not being real estate, would not be a bar to the plaintiff's recovery, but that the plaintiff might now come forward and show that when the mortgage was made it was personal property, and not real estate; that the defendants could not interpose the bank title as a bar to the plaintiff's claim.

"The judge explained to the jury the effect of the admission of the subsequent mortgages by Jonathan E. Janes of other property in said mill as personal property, and the ground upon which they were admitted under the statute. He charged the jury that they were not evidence of the fact that it was personal property, but were only admitted to contradict the witness Jonathan E. Janes.

"After the judge had finished his instructions, the counsel for the defendants handed him two other requests, marked B. 1 and 2. To the request marked 1, the judge said that his charge covered it; and as to the one marked 2, he instructed the jury that the fact that Jonathan E. Janes was an only son of Lowell E. Janes, and lived in the same house with his father, did not authorize the implication that this property in question was personal property when put upon the land, nor did it authorize the implication that it was to be real estate.

"No exceptions were taken by the counsel for the defendants to the instructions given, except such as may be considered as taken by the facts above stated.

"I find that the jury were not instructed as requested in the requests marked B. 1 and 2, and that the exceptions to the instructions given on these points were properly saved and ought to be allowed.

"I find that, although the requests marked A. 1, 2, 3, 4, 5 and 7 are not stated in the bill of exceptions precisely as handed to the judge, the jury were instructed substantially as requested

therein, and that no exceptions ought to be allowed on these points.

" I find that the jury were not instructed as requested in the requests marked A. 6, 8 and 9. I find that if the attention of the judge was not sufficiently called to these points by the requests handed to him before his charge, and by reading portions of them to him, it was called to the points therein after his charge by handing him the request marked B. 1 ; and therefore that the exceptions to the instructions given on these points were properly saved. I find that the requests 6, 8 and 9 were not stated in the bill of exceptions precisely as handed to the judge, but substantially the same. I therefore find that the exceptions to the instructions given on the points embodied in these requests ought to be allowed.

" I find that the bill of exceptions presented to the judge for allowance, and annexed to the petition, was not correct and ought not to have been allowed; that a true bill of exceptions requires the changes above stated, so that the bill will read as follows," namely, as above printed, excluding all the words printed in italics, and the letters and figures prefixed to the requests for instructions, and including the other words printed in brackets.

The judge who presided at the trial made, upon the bill of exceptions tendered to him, and ordered to be filed, the following certificate :

" The exceptions are disallowed. The evidence is incorrectly stated. On the part of the plaintiff, the evidence tended to show that the boiler was put into the building of the father with his consent, for the sole benefit of the son ; that it was designedly so fixed, and the building so fitted, that it might be removed at the will of the son without injury to the freehold, and that all this was done with the consent of the father. There was no evidence that the savings bank had made any claim to the boiler. I do not remember any exception as to the admission of other mortgages of the boiler by the son.

" As to the written prayers for instruction, I stated to the counsel that if, after my charge to the jury, they should think there were any of their prayers not sufficiently covered by instructions, to call my attention to them. This was done in several instances, and further instructions were given and no exceptions were taken.

" The clerk may enter the exceptions disallowed, unless the parties make some other agreement, and file this paper."

*A. J. Fargo*, (*S. T. Spaulding* with him,) for the petitioners.

*G. M. Stearns*, for the respondent.

GRAY, C. J. The right to establish the truth of exceptions disallowed by the judge presiding at the trial is given and limited by the statute, which provides that " the truth of the exceptions presented may be established before the Supreme Judicial Court upon petition setting forth the grievance, and thereupon, the truth thereof being established, the exceptions shall be heard, and the same proceedings had as if they had been duly signed and brought up to said court with the petition." Gen. Sts. *c.* 115, § 11.

The certificate of disallowance, which the presiding judge is required by the Gen. Sts. *c.* 115, § 8, to make in writing, is *primâ facie* evidence that the exceptions presented are not conformable to the truth, though subject to be controlled by other evidence. *Bottum* v. *Fogle*, 105 Mass. 42.

If no objection is made to the form, the time of filing or the service of the petition, the practice is to refer it to a commissioner to hear the parties and report to the court the facts bearing upon the question whether the truth of the exceptions is established; but that question is a question of law, to be decided by the court upon the facts reported. *Cullen* v. *Sears*, 112 Mass.

The remedy is limited to exceptions taken at the trial and seasonably presented in writing to the presiding judge. *Joannes* v. *Underwood*, 6 Allen, 241. *Lee* v. *Gibbs*, 10 Allen, 248. *Bottum* v. *Fogle*, 105 Mass. 42. And the substantial truth, though not the literal accuracy, of the exceptions as so alleged and tendered must be proved. If an exception alleged does not state the ruling excepted to, and the evidence to which it applied, with substantial accuracy, so as to present the same question, and in the same aspect, to this court as to the court below, the petitioner is not entitled to be heard in this court upon the exceptions, either in the form in which they were presented to the judge below, or in the form in which it is made to appear that they should have been presented; not upon the exceptions alleged, because they are not proved; nor upon the exceptions proved, because they were not alleged. *Cullen* v. *Sears*, above cited. *Crow* v. *Stowe*, 113

Mass. . But the right of the excepting party to have an exception, duly alleged by him, considered by this court, is not to be defeated by mere verbal errors or unimportant differences in the form of statement. *Bates* v. *Santom, ante,* 120.

If the bill, as tendered to the presiding judge, contains several distinct and independent exceptions, clearly and separately stated, the truth of one or more of them may be established, although the others are not proved as alleged, or are waived by the excepting party. Thus in *Commonwealth* v. *Marshall,* 15 Gray, 202, where a bill of exceptions alleged twelve distinct grounds of exception, stated and numbered separately, and the excepting party waived all but one, which related to a ruling upon a question of evidence, that exception was allowed and considered and sustained. The right to waive some of the exceptions alleged, and rely upon the others, on proving their truth, was recognized in the opinion of the court in *Bottum* v. *Fogle,* 105 Mass. 42, 44; but, as no exceptions had been duly alleged in that case, the court had no occasion to consider this matter particularly. In *Cullen* v. *Sears,* above cited, the bill tendered contained two matters of exception, wholly distinct from each other, the one to rulings as to the effect of an auditor's report, and the other upon a variance between the declaration and the proof; and, although the truth of the exceptions upon the first point was not established, the exception upon the other, being proved to be true, was considered and decided. But when true and false statements are blended or intermingled in the exceptions as tendered, the presiding judge is under no obligation to sift out the truth from the falsehood, and may properly disallow the whole bill of exceptions as not conformable to the truth.

The case before us is an action of tort in the nature of trover for the conversion of a boiler, bought and set up by an only son in a building erected by him on the land of his father. The plaintiff claimed title under a chattel mortgage from the son. The defendants contended that the boiler was part of the land, and had passed with it by an earlier mortgage from the father to a savings bank.

The defendants' exceptions relate, 1. to the admission in evidence of mortgages from the son to other persons of other machinery in the same building as personal property; 2. to the

effect of the original placing of the boiler by the son on his father's land ; 3. to the effect of the mortgage of the land by the father, with the assent of the son, to the bank.

1. The bill of exceptions tendered states that the other mortgages were admitted for the purpose of showing that the son had treated the machinery, put by him in the mill, as his personal property. It omits to state, what appears by the commissioner's report to be the truth, that those mortgages, when first offered, were excluded ; that they were ultimately admitted for the sole purpose of contradicting the testimony of the son, and after he had been asked whether he had not made written declarations to other parties that this property was personal property ; and that the judge instructed the jury that the other mortgages were not evidence of the fact that the boiler was personal property, but were only admitted to contradict the witness. In short, the bill of exceptions untruly states the rulings of the court, and the state of the evidence at the time the rulings were made.

2. Upon the question of the effect of the original placing of the boiler by the son on the land of the father, the statement, both of the evidence and the rulings, is also wide of the truth. The bill of exceptions omits an important portion of the evidence, as recited in the certificate of the judge, and reported by the commissioner ; and it states that the rulings requested on this part of the case were all refused, whereas it appears by the commissioner's report that they were given in substance, or with slight modifications. Indeed, the defendants' counsel at the argument waived his exceptions to all the rulings and refusals upon this subject, except to the alleged refusal to give one instruction requested, marked by the commissioner as B. 2. But even upon that the bill of exceptions fails to conform to the truth ; for it merely states that upon the fact therein supposed the judge declined to instruct the jury that " there is no implication that the boiler remained the personal property of the son ; but the implication, if any, is that it became realty ; " and fails to state that the judge did rule that that fact did not authorize the implication that it was personal property, nor did it authorize the implication that it was real estate.

3. Upon the subject of the mortgage of the land by the father with the assent of the son, to the savings bank, it is unnecessary

to consider the effect of the inaccuracy in the report of the testimony of the treasurer, of the variation between the requests as actually presented to the judge and as stated in the bill of exceptions, or of the including, in some of them, of recitals of evidence. It is sufficient to say that the request upon this point, found by the commissioner to have been presented to the judge at the conclusion of his charge, is not stated in the bill of exceptions as tendered ; and that all those which are stated therein form part of one series of requests presented to the judge as he rose to charge the jury, in which the requests as to the effect of the mortgage to the bank are so intermingled with those upon the effect of the original setting of the boiler on the land, that the whole series, and the rulings and instructions of the judge upon the matters which it embraces, must be treated as one subject, the exceptions relating to which must, so far as the question of their conformity with the truth is concerned, stand or fall together.

For these reasons, we are of opinion that the whole bill of exceptions was rightly disallowed. In order to guard against misunderstanding, it is proper to add that we have great doubt whether, upon the commissioner's report of the facts and circumstances attending the presenting of the requests for instructions and the rulings upon the subject of those requests, there is anything which could in law be permitted to control the explicit certificate of the judge that no exception was taken to the refusal to give the instructions requested. But as, aside from this, the bill of exceptions is not conformable to the truth, we need not further consider that question.    *Petition dismissed.*