JAMES N. MORSE *vs.* ARTEMAS B. WOODWORTH.

Middlesex.   June 12, 1891. — June 26, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

November 10, 1891. — January 6, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Establishment of Exceptions — Duress — Threats of Imprisonment — Secondary Evidence — Rescission of Contract — Entries by Clerk.*

On a petition to prove exceptions, this court can consider only whether the truth of the bill of exceptions actually and seasonably filed by the aggrieved party

is established; in doing this, however, slight errors may be corrected, and details may be added which are necessary in order properly to present the exceptions relied on.

In an action upon several promissory notes, it appeared at the trial that the notes were in the possession of the defendant, who refused, after a demand upon him by the plaintiff, to produce them, claiming that they had been paid. *Held*, that secondary evidence of the contents of the notes was rightly admitted.

Where the question was whether the plaintiff, a clerk in the defendant's employ, had embezzled money belonging to the defendant, and whether, after being accused of embezzlement by the defendant, the plaintiff had made a settlement with him under duress, through threats of arrest, and the plaintiff, for the purpose of showing the defendant's mode of business, offered three slips of paper containing entries made by the plaintiff in the course of his employment, most of the entries thereon being subsequent to the time when the plaintiff was first accused, it was *held* that the slips were the defendant's property, made and used in his business, and were properly admitted in evidence.

Where the plaintiff made a settlement with the defendant, and as part of the settlement received from the defendant a release of all the plaintiff's claim against him, and where the plaintiff subsequently rescinded the settlement on the ground of duress, it was *held* that the release was not property of the defendant in the plaintiff's hands, and that it was not necessary for the plaintiff to return it to the defendant before bringing suit upon a claim included in the settlement.

One who reasonably believes that another has committed a crime, and who by threats of prosecution and imprisonment for the crime overcomes the will of the other and induces him to execute a contract which he would not have made voluntarily, cannot enforce the contract if the other attempts to avoid it on the ground of duress.

PETITION to establish the truth of exceptions alleged by Artemas B. Woodworth, in an action of contract brought against him by James N. Morse, and disallowed by *Bishop*, J., who presided at the trial in the Superior Court. The bill of exceptions as originally tendered to the judge by the petitioner is hereinafter set forth in Roman type. The words enclosed in parentheses are those which this court in the following opinion suggest should be stricken out of the bill as not established, and those enclosed in brackets and printed in Italics are those which this court suggest should be added thereto by way of amendment.

" This is an action of contract to recover the amount of three promissory notes of two thousand dollars each, given by the defendant to the plaintiff. The writ and pleadings may be referred to.

" The defendant, under the name of A. L. Brooks & Co., carried on the business of manufacturing and selling lumber, and

the plaintiff was his bookkeeper from July 1, 1879, to December 16, 1886.  *a* [*In the course of the trial the defendant introduced testimony, by cross-examination of the plaintiff or otherwise, tending to show facts as follows.*]  In the latter part of October, 1886, the defendant had suspicions that the plaintiff was taking money belonging to the defendant; a plan was devised, by which it was ascertained that during a period of about eleven days in November, 1886, more money was paid to the plaintiff as such bookkeeper than he entered upon his cash-book; that upon examination of the books kept by the plaintiff, it was discovered that the plaintiff, if so disposed, could have taken large amounts of money from the defendant without being discovered, and the defendant believed that the plaintiff had taken from him a large sum of money, and the defendant charged the plaintiff with having taken the money, and called his attention to what appeared to be irregularities upon his books, and to the fact that more money had been paid into his hands during certain days in November than he had entered upon his cash-book.  This the plaintiff failed to explain.  *b* [*It appeared that*] after conferences consuming parts of two days, a settlement was made between the plaintiff and the defendant, whereby the plaintiff consented to pay, and did pay, to the defendant the sum of $5,500.  In making this settlement, the plaintiff surrendered to the defendant the notes in suit, amounting at that time to $6,088, and received a check for the sum of $588, being the difference between the sum agreed upon to be paid by the plaintiff to the defendant and the amount of said notes.  *c* [*The defendant also introduced evidence tending to show that*] After the settlement had been made, the notes delivered to the defendant, and the check received by the plaintiff, releases were for the first time spoken of, and that by the plaintiff, *d* [. *It appeared that*] (and) then the plaintiff and defendant executed and delivered to each other mutual releases under seal, copies whereof are hereto annexed, and marked A and B.

" The plaintiff, before he commenced his action, tendered said check of $588 to the defendant, and demanded the return to him of said notes; the defendant refused to receive said check or to return said notes.  The release given by the defendant to the plaintiff was retained by the plaintiff, and not returned or ten-

dered to the defendant before the commencement of this action. [, *but was tendered at the trial.*]

" The plaintiff notified the defendant to produce said notes at the trial; after the plaintiff had opened his case he called upon the defendant for these notes; the defendant admitted that he had them, but refused to produce them, stating to the court as reasons therefor that the notes had been paid by him, and, upon such payment, delivered to him, and that by virtue of said release given by the plaintiff to him he was discharged from all liability therefor, and that such possession was *prima facie* evidence of payment; and the court ruled, on the defendant's request, that such possession was *prima facie* evidence of payment. The plaintiff then asked to be allowed to introduce secondary evidence to the jury of the contents of these notes, because, being in the defendant's possession, he had refused to produce them upon notice. To this the defendant objected, and claimed that the plaintiff must first lay the foundation for the introduction of such secondary evidence, and that this presented a question to the court, and not to the jury, and he asked the court so to rule (; but the court refused so to rule, and the defendant excepted thereto,) *e* [*The judge ruled as requested; and thereupon, upon the assurance of the counsel for the plaintiff that before closing his case he would offer evidence in support of certain facts stated by him in opening his case to the jury,*] and against the defendant's objection, the court permitted the plaintiff, by secondary evidence, to show the contents of those notes.                    *c*

" The said releases were both put in evidence, and the defendant then requested the court to rule that the plaintiff, not having returned or tendered to the defendant the said release given by him to the plaintiff before this action was commenced, could not maintain this action. The court refused so to do, and ruled that the plaintiff could maintain his action without first returning or offering to return the release given to him by the defendant; and to this ruling and refusal to rule the defendant excepted.

" The plaintiff offered in evidence three slips of paper or memoranda, claiming that the same represented amounts of cash sales, for the purpose of showing (that the footings thereon

compared with the entries on the cash-book kept by the plaintiff.) [*the manner in which. the defendant's business was conducted.*] There were no dates on said memoranda showing when these entries were made. The plaintiff testified that the greater portion of the entries or figures on these slips were made by him on and subsequent to December 10, 1886, the day when the first accusation was made. To the introduction of the slips in evidence the defendant objected, and against his objection the court admitted the slips or memoranda as evidence, and the defendant excepted thereto.

" (The defendant, upon written notice of the plaintiff, produced all the account-books, pay-roll, and stock-books kept by him while in the defendant's employ. The plaintiff offered to show from these books the nature and extent of the defendant's business, the manner in which it had been conducted, and the method by which the books had been kept, for the purpose of showing that it did not appear by them that the plaintiff had abstracted or misappropriated any money of the defendant, and that, if there were any irregularities or inaccuracies therein, the same could be by him explained. To this evidence the defendant objected; but the court overruled the objection and admitted the evidence, and the defendant excepted thereto.)

" The plaintiff claimed that the release executed and delivered by him to the defendant was done by him under duress practised upon him by the defendant or his agents, and he introduced evidence tending to show that he was threatened by the defendant or his agents with prosecution and arrest on a criminal charge for wrongfully taking the defendant's money, unless he made a settlement with the defendant for the money so alleged to have been taken by him. The plaintiff testified that he thought the defendant believed that he had wrongfully taken some of the defendant's money. (When the plaintiff rested his case, the defendant asked the court to rule, that, assuming the plaintiff's evidence to be true, it was insufficient to authorize the introduction of secondary evidence of the contents of these notes; but the court refused to rule at all, unless the defendant would also then rest his case, which the defendant declined to do, and excepted to the refusal of the court to rule.)

" The defendant denied any duress, and introduced evidence

tending to show that no threats of a prosecution or arrest of the plaintiff on any criminal charge whatever were made by him or his agents, and that the settlement and the delivery of the notes and the execution and delivery of the release by the plaintiff were his free and voluntary acts, and it was admitted that no criminal or civil proceedings had been commenced against the plaintiff. The court instructed the jury that 'duress which will avoid a contract is of two kinds: duress by actual imprisonment and duress by threats. Duress by the imposition of physical force, imprisonment, etc., is not claimed here. The duress which is claimed here is by threats. There is in this case no claim of threats involving fear for the life, or limb, or bodily injury. The claim is for threats involving fear of imprisonment. In such a case, I instruct you that, in order to avoid a contract, the threats must be such as in the mind of a man of ordinary firmness would induce a reasonable fear of imprisonment to an extent sufficient to overcome his mind and will, and that the mind and will of the plaintiff must have been overcome by these threats, and that he yielded to them, and that his acts were not his voluntary acts.' *f* [*'If the circumstances are such that it might be reasonably supposed that a man of ordinary firmness would yield to coercion and to influences brought to bear upon him, such as are testified to in a case, and you are satisfied that the party in the case did so yield, then there is duress. Now in testing this question you may well ask yourselves what a man of ordinary firmness would do under the circumstances disclosed in this case. Even if you should find that there were threats in this case, yet if, in your opinion, they were not such as would induce, in the mind of a man of ordinary firmness, a reasonable fear of imprisonment, then they do not amount to duress, and are to be disregarded by you.'*]

"At the plaintiff's request, the court instructed the jury that the threats necessary to constitute duress may be derived from the conduct and declaration of the defendant or his agents, with his knowledge and assent; that it is not necessary, to constitute duress, that the threats must be uttered by the man himself in words, — they may be derived from the conduct and declarations of the defendant or his agents, with his knowledge and assent; that it was not necessary that threats should be made or repeated

at the moment the release was given, if they were made on the day when the release was executed, at any time before the execution; and that if the conduct and declarations of the defendant, or his agents with his knowledge and assent, were such as to induce a well grounded belief on the part of the plaintiff that he would be arrested and prosecuted on a criminal charge if he did not execute the release, and such as to overcome his mind and will, and were sufficient to overcome the mind and will of an ordinary person, the release is void; that if the threats of prosecution or arrest of the plaintiff were made by the defendant or his agents with his knowledge or assent, unless the plaintiff made a settlement with the defendant, and if the execution of the release was a part of the scheme of settlement, and if the plaintiff was induced to execute such release because of such threats, then the release was void; provided, always, that the threats were such as did actually overcome the mind and will of the plaintiff, and did subject his will to the power of the defendant, or of those acting with him, so that it was not a voluntary act, but his mind and will were subjected to their power, and that the threats were sufficient to overcome the mind and will of an ordinary person.

[" *These are not all of the instructions that were given upon the question of duress.*]

" To these instructions the defendant excepted. The defendant, among other things, requested the court to instruct the jury that, — If the jury shall find that, at the conclusion of the settlement between the parties, December 11, 1886, and as part thereof, they executed and delivered the mutual release in evidence, and that the plaintiff commenced this action to recover the amount due on the notes which were surrendered by him to the defendant in performance and as part of such settlement, and before such releases were executed, without first returning or tendering to the defendant the release given by him to the plaintiff, then their verdict should be for the defendant. If the jury shall find that the defendant believed the plaintiff had wrongfully taken money belonging to the defendant and appropriated the same to his own use, and that no civil or criminal proceedings had been commenced against the plaintiff on account thereof, then mere threats of prosecution or arrest by the defendant would not

constitute duress. That mere threats of criminal prosecution or arrest, when no warrant has been issued or proceedings commenced, do not constitute duress.

" These requests of the defendant the court refused to give, but in place of the last two requests gave the following: *g* [' *I am asked to give you instructions with reference to the effect of* " *mere* " *threats of prosecution or arrest. I think I have already done so. The instruction which should be given you with reference to threats of*] (mere threats of) prosecution or arrest would turn upon the meaning and significance to be attached to the word " mere." I think, in defining to you in what duress consists, and in saying to you that duress by threats must consist of such threats as would overcome the mind of a man of ordinary firmness, and did overcome the mind and will of the plaintiff in this case, I have defined, as exactly as I can, the character and extent of the threats necessary to constitute duress.'

" The defendant excepted to the refusal of the court to give the instructions prayed for, and to the instructions given by it. The jury returned a verdict for the plaintiff.

" To the foregoing rulings, refusals to rule, refusals to instruct, and instructions given, and admission of evidence, the defendant, being aggrieved thereby, excepts, and prays that his exceptions may be allowed."

The petition was referred by this court to a commissioner, who duly made a report thereon. The case, so far as material to the points decided, appears in the opinion.

*J. N. Marshall & M. L. Hamblet, (J. C. Burke* with them,) for Woodworth.

*G. F. Richardson,* for Morse.

C. ALLEN, J. This is a petition by the defendant in the action of *Morse* v. *Woodworth,* to prove a bill of exceptions. At the trial of the action in the Superior Court a verdict was rendered for the plaintiff, and the defendant duly filed a bill of exceptions, which was disallowed by the presiding judge. The defendant, being aggrieved, seeks to establish the truth of the exceptions presented, as he is allowed to do under the Pub. Sts. c. 153, § 13, by a petition to this court.

In the endeavor to come to an agreement before the Superior Court as to the proper form of a bill of exceptions, a draft

was made by the counsel for the plaintiff, and one or more subsequent drafts by the counsel for the defendant, but neither one of these proved satisfactory. The judge himself also prepared and submitted to the defendant a draft of a bill of exceptions, which he was willing to sign, and in fact did sign, but this was not satisfactory to the defendant, and was not accepted by him. The defendant therefore presents this petition, seeking to establish the truth of his original bill of exceptions, as he has a right to do. He is not bound to accept a bill of exceptions prepared by his adversary, or by the judge. What we have to do is to examine the bill of exceptions which was seasonably tendered by him, and ascertain and determine if he has established the truth of it, or of any separable parts of it. We are not to consider whether he might have presented any other exceptions than those actually contained in his bill of exceptions. We have nothing to do with anything except the bill of exceptions which he actually and seasonably tendered to the judge, and which by his petition he now seeks to establish. *Sawyer* v. *Yale Iron Works*, 116 Mass. 424, 432, and cases cited.

At the same time, the right of an excepting party to have his exceptions considered by this court is not to be defeated by mere verbal errors, or unimportant differences in the form of statement. *Sawyer* v. *Yale Iron Works*, *ubi supra*. *Markey* v. *Mutual Benefit Ins. Co.* 118 Mass. 178. If such errors are found, which may fairly be attributed to inadvertence, and which do not essentially change the exception intended to be taken, or if there is an omission of details which can readily be supplied, and which ought to be added in order properly to present the exception relied upon, it is within the power of this court, under a reasonable construction of the statute referred to, to suggest such needed amendments to the excepting party, and, if he adopts them, to allow him the benefit of his exceptions as thus modified. Otherwise, by an excess of strictness, a party might be deprived of substantial rights.

It is always to be borne in mind, however, that the exceptions to which the party is entitled are, in substance, merely those which he has alleged in his bill of exceptions duly tendered.

In accordance with the usual practice, a commissioner was appointed by this court to settle the truth of the exceptions,

and make report thereof. The commissioner has made a report which does not follow the form of the bill of exceptions tendered by the defendant, but is a careful and chronological statement of the facts of the case and of the course of the trial, which, if adopted by the defendant, would with slight modifications have made a proper form of a bill of exceptions. In this, the commissioner has not exactly performed the function with which he was charged. But, at the defendant's request, we have before us, not only the commissioner's report of the course of the trial, but also the stenographic report of the testimony taken at the trial, and a stenographic report of the proceedings before the commissioner, so that we are able to take the defendant's bill of exceptions and determine how far it should be allowed; and the results to which we have come are in all particulars the same in substance as those arrived at by the commissioner, though we have not felt at liberty to make such great changes as he did in the form of the bill of exceptions, as this would substitute a new bill of exceptions for that tendered by the defendant.

The defendant's bill of exceptions, after referring to the writ and pleadings, instead of stating the course of proceedings in the order in which they occurred at the trial, makes a statement of various particulars which were brought out in part from his own witnesses. It is to be supposed that the defendant intended in this way to make the statement of the case more clear. We have not found it so, but the order of making the statement is not of essential importance. The objection taken in the certificate of the presiding judge *is,* that in several particulars matters are stated as facts which were really in controversy. This appears to be the case, and it might convey an erroneous impression *to* have them stated as absolute facts. But we do not think this objection so serious as to deprive the defendant of his exceptions, provided he makes the following amendments.

In the second paragraph of the bill of exceptions, after the first sentence therein, at a place designated by the letter *a,* insert these words : " In the course of the trial, the defendant introduced testimony, by cross-examination of the plaintiff or otherwise, tending to show facts as follows."

This statement of facts which the evidence tended to prove is to continue down to the place designated by the letter *b*. At this place, insert these words : " It appeared that." The facts which appeared are those contained in the statement beginning " after conferences " and ending with the words " said notes," the place being designated by the letter *c*. At that place insert the words : " The defendant also introduced evidence tending to show that." This statement of facts which the evidence tended to show is to continue to the place designated by the letter *d*. At that place, insert the words, " It appeared that," and strike out the word " and." The facts thus appearing are those contained in the rest of the paragraph.

In the next paragraph, these words should be added, at the end : " but was tendered at the trial."

No specific exception was taken by the defendant in respect to any of the above matters, but they were stated for the purpose of showing the general aspect of the case, from his point of view.

The first exception alleged by the defendant in his bill of exceptions relates to the right of the plaintiff to introduce secondary evidence of the contents of the notes sued upon, the notes being in the defendant's possession. The bill of exceptions goes on to say, " To this the defendant objected, and claimed that the plaintiff must first lay the foundation for the introduction of such secondary evidence, and that this presented a question to the court and not to the jury, and he asked the court so to rule ; but the court refused so to rule, and the defendant excepted thereto, and, against the defendant's objection, the court permitted the plaintiff by secondary evidence to show the contents of those notes."

At the hearing before the commissioner, the two counsel for the defendant made statements going to show that they understood the facts to be in accordance with the statement in the bill of exceptions. The commissioner had before him the stenographer's minutes of the trial, and the stenographer himself was also a witness ; a stenographer employed by the defendant also testified, as well as the two counsel who represented the plaintiff at the trial, and another attorney at law who seems to have had some connection with the case. In addition

to all this, the presiding judge also was called as a witness, though this was quite unnecessary (116 Mass. 424), and submitted to a long cross-examination by the defendant's counsel. An examination of this evidence leaves no reasonable doubt in our minds that the counsel for the defendant were in error in their recollection, and that the ruling of the judge was that evidence must be introduced by the plaintiff to overcome the *prima facie* presumption of payment which arose from the defendant's possession of the notes; that proof of the facts stated by the plaintiff's counsel in his opening of the case to the jury would be sufficient for that purpose; and that, as matter of convenience, and to save the necessity of taking the testimony twice, on the assurance of the plaintiff's counsel that evidence of those facts would be offered, the judge allowed the plaintiff to put in secondary evidence of the contents of the notes, and also to put in evidence of the facts to the jury, leaving it open for the defendant's counsel to renew the objection at the close of the plaintiff's case, if the evidence introduced should fall short of the opening statement.

This exception does not deal at all with the question of whether those facts relied upon by the plaintiff would in law, if proved, be sufficient to warrant the introduction of the secondary evidence, nor does the bill of exceptions contain any statement of what those facts were. The point of the exception was merely that the judge refused to make the ruling that it was necessary for the plaintiff to lay the foundation for the introduction of such secondary evidence. We are satisfied that the judge did not refuse to make that ruling, but that he ruled upon that point in accordance with the defendant's request.

The bill of exceptions should therefore be amended at the place marked *e*, by striking out the words " but the court refused so to rule, and the defendant excepted thereto," and inserting in place thereof the following words: " The judge ruled as requested; and thereupon, upon the assurance of the counsel for the plaintiff that before closing his case he would offer evidence in support of certain facts stated by him in opening his case to the jury."

The second exception relates to the request for a ruling as to the effect of the omission to return or tender to the defendant,

before the commencement of the action, the release given by him to the plaintiff. A statement having already been inserted that the release was tendered at the trial, this exception is to stand.

The third exception relates to the admission of three slips of paper. The judge disallowed this exception, on the ground that the plaintiff's purpose in offering them is erroneously stated; and this objection is well founded. A correction, however, may be made by striking out the words "that the footings thereon compared with the entries on the cash-book kept by the plaintiff," and inserting in place thereof the following words: "the manner in which the defendant's business was conducted."

The fourth exception relates to the admission of the defendant's books of account. The bill of exceptions sets forth that "the defendant, upon written notice of the plaintiff, produced all the account-books, pay-roll, and stock-books kept by him while in the defendant's employ. The plaintiff offered to show from these books the nature and extent of the defendant's business, the manner in which it had been conducted, and the method by which the books had been kept, for the purpose of showing that it did not appear by them that the plaintiff had abstracted or misappropriated any money of the defendant, and that, if there were any irregularities or inaccuracies therein, the same could be by him explained. To this evidence the defendant objected; but the court overruled the objection and admitted the evidence, and the defendant excepted thereto."

The actual state of things to which this exception relates was as follows. The plaintiff testified that a lawyer (who was employed by the defendant) called at the defendant's office where the plaintiff was at work; that the defendant and one Ripley (who was also employed by the defendant in respect to this matter) were there; that the lawyer told the plaintiff that money was missing and asked the plaintiff to go to his (the lawyer's) office; that they all went; that the ledger, cash-book, and journal were taken there; that the lawyer asked the plaintiff to go into the rear office with him and Ripley; that while there the lawyer asked an explanation of an entry of a charge in the journal, and said he did not find the amount of that

charge on the cash-book; that the item was of the amount of twenty-nine dollars; and that the plaintiff accordingly explained by the books in relation to the item, and pointed out items which, as he contended, explained and accounted for the supposed deficiency; and he was thereupon allowed in court to repeat the explanation as given to the lawyer, and to point out to the jury the entries on the cash-book and journal. The above interview with the lawyer was on the day before the settlement by which the plaintiff surrendered to the defendant the notes in suit.

The statement in the bill of exceptions in relation to the fourth exception is so far from being a fair account of what occurred at the trial, that it is disallowed entirely.

The bill of exceptions then contains a statement of what the plaintiff claimed in respect to the release executed and delivered by him to the defendant. The judge considered that this is not as full as it should be. It is not, however, necessary to set forth in great detail the claim of the plaintiff, and this statement may stand.

The fifth exception is in these words: " When the plaintiff rested his case, the defendant asked the court to rule, that, assuming the plaintiff's evidence to be true, it was insufficient to authorize the introduction of secondary evidence of the contents of these notes; but the court refused to rule at all, unless the defendant would also then rest his case, which the defendant declined to do, and excepted to the refusal of the court so to rule."

This exception is not to a ruling by the judge that the evidence as put in was sufficient in law to authorize the introduction of secondary evidence of the contents of the notes. The secondary evidence of the contents of the notes had been put in, on the assurance of the plaintiff's counsel that he would offer evidence of the facts stated by him in his opening address to the jury. When, at the conclusion of the plaintiff's case, the defendant's counsel renewed his objection that the evidence was insufficient, the judge said in plain terms that he thought the plaintiff had introduced sufficient evidence to justify the introduction of secondary evidence as to the contents of the notes, and that he ruled then, as he understood that he had

ruled before, that secondary evidence might be gone into.    This implies that the evidence had not fallen short of the opening statement of counsel.    It seems to us entirely plain that, upon this fine point whether the judge was warranted in allowing the contents of the notes to be proved by secondary evidence, he did not refuse to make a ruling, but that he ruled that such secondary evidence might be laid before the jury.

Whether the ruling of the judge upon this point was right or not could only be determined by a perusal of the evidence upon which the ruling was founded.    That evidence is not contained in the bill of exceptions, and that point is not presented to us. The exception taken was merely that the judge refused to rule at all upon the subject, and this statement is not supported by the proof.

The fifth exception, therefore, was properly disallowed, and is to be stricken out from the bill of exceptions.

The judge in his certificate stated that the bill of exceptions did not state his rulings and charge as fully as should be done. No question is made as to what his charge to the jury actually was, and we think it reasonable and proper that the following portion thereof, which is given in the report of the commissioner, should be inserted at the place marked *f*:

" If the circumstances are such that it might be reasonably supposed that a man of ordinary firmness would yield to coercion and to influences brought to bear upon him, such as are testified to in a case, and you are satisfied that the party in the case did so yield, then there is duress.    Now, in testing this question, you may well ask yourselves what a man of ordinary firmness would do under the circumstances disclosed in this case.    Even if you should find that there were threats in this case, yet if in your opinion they were not such as would induce in the mind of a man of ordinary firmness a reasonable fear of imprisonment, then they do not amount to duress, and are to be disregarded by you."

It should also be added: " These are not all of the instructions that were given upon the question of duress."

At the place marked *g*, the pencilled alteration made by the judge is correct, and should be adopted.

The result of the whole is, that the defendant's bill of ex-

ceptions, being amended in the above particulars, may, if the defendant so elects, stand as established; otherwise, it is to be disallowed, except as to those exceptions wherein no change is made.                                    *Ordered accordingly.*

The petitioner elected to accept the amendments to his bill of exceptions suggested in the above opinion; and afterwards the exceptions as thus established were argued on the merits.

*J. N. Marshall & J. C. Burke*, for Woodworth.

*G. F. Richardson*, (*D. M. Richardson* with him,) for Morse.

KNOWLTON, J. The plaintiff was rightly permitted to intro-duce secondary evidence of the contents of the notes on which the action was founded. It was admitted by the defendant that the notes were in his possession, and that he had been duly notified to produce them. When he refused at the trial to produce them on the plaintiff's call, a foundation was laid for parol proof of their contents. It was immaterial that the defendant said they had been paid. The plaintiff denied it, and which was right was one of the issues before the jury. Proof of the notes was essential to establish the plaintiff's claim. Even if it had been necessary for the plaintiff to introduce further evidence before he was entitled to call witnesses in regard to the language of the notes, the defendant was not injured by the ruling of the judge permitting proof of the notes before hearing the other evidence, since it was made on the assurance of the plaintiff's counsel that such evidence would be put in, and there is no pretence that the evidence was not in fact put in as promised. This was merely a ruling as to the order of proof, to which no exception lies.

It was no objection to the introduction of the three slips of paper, or memoranda, that most of the entries or figures upon them were made by the plaintiff on the day, or subsequent to the day, on which the defendant's first accusation was made. These slips were the property of the defendant, used in his business, and as such were competent evidence to show the way in which his business was done. On that point they were none the less evidence because some of the entries were made by his clerk, of whom he had supervision, even though that clerk was the plaintiff. If there had been any dispute as to the contents

of the papers, the fact that they were written in great part by the plaintiff would have had an important bearing on their value as evidence. It is not contended that there was error in allowing the plaintiff to show the defendant's mode of doing business, as bearing on the question whether the plaintiff was guilty of the charge made against him at the time the notes were given up, and whether he surrendered them freely in payment of a debt, or under duress of threats.

On rescinding the contract by which he delivered up the notes, the plaintiff tendered to the defendant the check for $588, which was given him as a part of the consideration for the surrender, and demanded back the notes, without tendering the release which he received at the same time from the defendant. The defendant contends that this action cannot be maintained, because the plaintiff failed to tender the release before commencing his suit. It is a familiar rule, that in order to rescind a contract one must return to the other party everything which was received as the consideration of the contract, so as to restore him to his former position. *Bassett* v. *Brown*, 105 Mass. 551. But when all that was received was a promissory note of the other party, the note need not be tendered before bringing suit. It is enough if it is delivered up at the trial; for as between the parties it is not property, but a mere promise. *Thurston* v. *Blanchard*, 22 Pick. 18. *Shaw* v. *Methodist Episcopal Society*, 8 Met. 223. *Foss* v. *Hildreth*, 10 Allen, 76. *Snow* v. *Alley*, 144 Mass. 546, 551. The defendant's release was not property in the hands of the plaintiff, and upon a rescission of the contract it became of no effect. It was not necessary to return it to put the defendant *in statu quo ;* for after the rescission it could neither do the plaintiff any good nor the defendant any harm. All that could reasonably be required was that it should be delivered up before the entry of judgment, and we do not decide that this is necessary.

The only remaining exceptions relate to the requests of the defendant and the rulings of the court in regard to duress. The plaintiff contended that he gave up the notes and signed the release under duress by threats of imprisonment. The question of law involved is whether one who believes and has reason to believe that another has committed a crime, and who,

by threats of prosecution and imprisonment for the crime, overcomes the will of the other, and induces him to execute a contract which he would not have made voluntarily, can enforce the contract if the other attempts to avoid it on the ground of duress.

Duress at the common law is of two kinds, duress by imprisonment and duress by threats. Some of the definitions of duress *per minas* are not broad enough to include constraint by threats of imprisonment. But it is well settled that threats of unlawful imprisonment may be made the means of duress, as well as threats of grievous bodily harm. The rule as to duress *per minas* has now a broader application than formerly. It is founded on the principle that a contract rests on the free and voluntary action of the minds of the parties meeting in an agreement which is to be binding upon them. If an influence is exerted on one of them of such a kind as to overcome his will and compel a formal assent to an undertaking when he does not really agree to it, and so to make that appear to be his act which is not his but another's, imposed on him through fear which deprives him of self-control, there is no contract unless the other deals with him in good faith, in ignorance of the improper influence, and in the belief that he is acting voluntarily.

To set aside a contract for duress it must be shown, first, that the will of one of the parties was overcome, and that he was thus subjected to the power of another, and that the means used to induce him to act were of such a kind as would overcome the mind and will of an ordinary person. It has often been held that threats of civil suits and of ordinary proceedings against property are not enough, because ordinary persons do not cease to act voluntarily on account of such threats. But threats of imprisonment may be so violent and forceful as to have that effect. It must also be shown that the other party to the contract is not, through ignorance of the duress or for any other reason, in a position which entitles him to take advantage of a contract made under constraint without voluntary assent to it. If he knows that means have been used to overcome the will of him with whom he is dealing, so that he is to obtain a formal agreement which is not a real agreement, it is against equity and good conscience for him to become a party to the contract,

and it is unlawful for him to attempt to gain a benefit from such an influence improperly exerted.

A contract obtained by duress of unlawful imprisonment is voidable. And if the imprisonment is under legal process in regular form, it is nevertheless unlawful as against one who procured it improperly for the purpose of obtaining the execution of a contract; and a contract obtained by means of it is voidable for duress. So it has been said that imprisonment under a legal process issued for a just cause is duress that will avoid a contract if such imprisonment is unlawfully used to obtain the contract. *Richardson* v. *Duncan,* 3 N. H. 508. See also *Foshay* v. *Ferguson,* 5 Hill, (N. Y.) 154; *United States* v. *Huckabee,* 16 Wall. 414, 431; *Miller* v. *Miller,* 68 Penn. St. 486; *Walbridge* v. *Arnold,* 21 Conn. 424; *Wood* v. *Graves,* 144 Mass. 365, and cases cited.

It has sometimes been held that threats of imprisonment, to constitute duress, must be of unlawful imprisonment. But the question is whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the execution of a threat which was made for the purpose of forcing a guilty person to enter into a contract may be lawful as against the authorities and the public, but unlawful as against the threatener, when considered in reference to his effort to use for his private benefit processes provided for the protection of the public and the punishment of crime. One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way, on the ground that the rights of the parties are to be determined by their language and their overt acts, without reference to the influences which moved them. In such a case, there is no reason why one should be bound by a contract obtained by force, which in reality is not his, but another's.

We are aware that there are cases which tend to support the contention of the defendant. *Harmon* v. *Harmon,* 61 Maine, 227. *Bodine* v. *Morgan,* 10 Stew. 426, 428. *Landa* v. *Obert,* 45

Texas, 539. *Knapp* v. *Hyde*, 60 Barb. 80. But we are of opinion that the view of the subject heretofore taken by this court, which we have followed in this opinion, rests on sound principles, and is in conformity with most of the recent decisions in such cases, both in England and America. *Hackett* v. *King*, 6 Allen, 58. *Taylor* v. *Jaques*, 106 Mass. 291. *Harris* v. *Carmody*, 131 Mass. 51. *Bryant* v. *Peck & Whipple Co.* 154 Mass. 460. *Williams* v. *Bayley*, L. R. 1 H. L. 200; *S. C.* 4 Giff. 638, 663, note. *Eadie* v. *Slimmon*, 26 N. Y. 9. *Adams* v. *Irving National Bank*, 116 N. Y. 606. *Foley* v. *Greene*, 14 R. I. 618. *Sharon* v. *Gager*, 46 Conn. 189. *Bane* v. *Detrick*, 52 Ill. 19. *Fay* v. *Oatley*, 6 Wis. 42.

We do not intimate that a note given in consideration of money embezzled from the payee can be avoided on the ground of duress, merely because the fear of arrest and imprisonment, if he failed to pay, was one of the inducements to the embezzler to make the note. But if the fact that he is liable to arrest and imprisonment is used as a threat to overcome his will and compel a settlement which he would not have made voluntarily, the case is different. The question in every such case is, whether his liability to imprisonment was used against him, by way of a threat, to force a settlement. If so, the use was improper and unlawful, and if the threats were such as would naturally overcome the mind and will of an ordinary man, and if they overcame his, he may avoid the settlement. The rulings and refusals to rule were correct.

*Exceptions overruled.*