ARTHUR HARRIS *vs.* LOTT CARMODY & another.

Essex.   Nov. 6, 1880. — April 8, 1881.   COLT, ENDICOTT & FIELD, JJ., absent.

A father may avoid a mortgage which he has been induced to sign by threats of the prosecution and imprisonment of his son.

In an action on the Gen. Sts. c. 137, and the St. of 1879, c. 237, to recover possession of land, alleged to be held by the defendant "unlawfully and against the right of the plaintiff," evidence that the deed to the plaintiff was executed under duress is admissible under an answer containing a general denial only.

ACTION on the St. of 1879, c. 237,* against Lott Carmody and Mary H. Carmody, to recover possession of a parcel of land in West Newbury. Writ dated July 7, 1879. Answer, a general denial.

At the trial in the Superior Court, before *Gardner,* J., the plaintiff put in evidence a mortgage containing a power of sale, and offered evidence tending to show that the defendant Lott executed the mortgage, and that there had been a breach of the conditions of the mortgage, and a sale under the power to the plaintiff.

The defendants offered evidence tending to show that the mortgage was executed by the defendant Lott under duress.

The plaintiff requested the judge to rule that such evidence would not be admissible under the answer without specially pleading the same; but the judge refused so to rule, and admitted the evidence.

―――――――――――

* The provisions of this chapter are printed in 130 Mass. 540, note.

The evidence tended to show that the mortgage was given in settlement of several notes purporting to have been indorsed by Lott, and in settlement of a suit then pending in court on several other notes purporting to have been indorsed by Lott and duly protested, which notes Lott denied that he had indorsed, but contended that they had been forged by one of his sons and his son-in-law, and one of them by a man by the name of Costello, who was the plaintiff's partner at that time and had one fourth interest in the notes and mortgage; that the settlement was made just before the case came up for trial; that the parties met, and, after some discussion, the defendant's attorney proposed that Lott should give a note, with security, for $1000, the whole amount of the notes being over $2000; that the plaintiff expressed satisfaction with the offer, but the defendant objected to paying anything.

There was also evidence tending to show that the mortgage and notes were on interest, payable semiannually, and that the female defendant paid the interest as it became due in six months and in one year after the execution of the mortgage, once in company with her husband. She stated at the trial that she paid it for her son.

The plaintiff offered evidence tending to show that, after a discussion in which it was stated by the plaintiff's attorney to the defendant's attorney, not in the presence of the parties to the suit, that, if the defendant succeeded in his defence, the result would be that his son would be liable to prosecution for forgery and to sentence for ten years to the state prison, the defendant agreed to the settlement, and afterwards the note and mortgage were executed by him.

The defendants offered evidence tending to show that the plaintiff, through his agent and attorneys, threatened Lott, that if he did not execute the mortgage and note, his son would be sent to the state prison for ten years, and that he finally gave the privilege to the plaintiff's attorneys to sign his name to the mortgage and note, by reason of the threats made.

The judge instructed the jury, that the statement made by the plaintiff's attorney to the defendant's attorney would not be evidence of duress, and should not be considered by them; and also instructed the jury as to what was duress, to which no

objection was made; and, further, that if Lott's mind and will were overcome by the threats of the plaintiff's agents, so that the execution of the note and mortgage were extorted from him by the fear of a prosecution of his son for forgery, or of his being sent to the state prison for ten years, and against his will, this would render the note and mortgage invalid, and of no force or effect; that if these threats were made as contended by the defendants, and constituted any part of the consideration of the note and mortgage, this would be sufficient to render them invalid, and of no force against the defendants. The case was submitted to the jury under other instructions not objected to.

The jury found for the defendants, and, upon inquiry by the court, stated that they found that the notes and mortgage were executed by Lott under duress. The plaintiff alleged exceptions to the admission of the evidence objected to, and to the ruling above set forth.

*W. D. Northend & E. F. Stone*, for the plaintiff.

*P. O'Loughlin & J. M. Raymond*, for the defendants.

MORTON, J. At the trial, the evidence tended to show that the plaintiff sued the male defendant upon several promissory notes purporting to have been indorsed by him; that the defendant set up in that suit that the notes were not indorsed by him, but his pretended signatures were forged by his son; and that a settlement of that suit was made, under which the defendant gave his note for one thousand dollars, secured by a mortgage of real estate.

In the case at bar, the defendant seeks to avoid this mortgage upon the ground that he was induced to execute it by duress. The evidence tended to show that he was induced to execute it by threats of the prosecution and imprisonment of his son. The court instructed the jury as to what would constitute duress, without objection being taken; and then ruled in substance that the defendant could avoid the mortgage by proof of duress to his son. The plaintiff excepted to this ruling, and the first question is as to its correctness.

At common law, as a general rule, the defence of duress *per minas* must be sustained by proof of threats which create a reasonable fear of loss of life, or of great bodily harm or of imprisonment, of the person to whom the threats are made, and one

man cannot avoid his obligation by reason of duress to another. There is a well-settled exception to this rule in the case of husband and wife, all the authorities agreeing that each may avoid a contract if it was made to relieve the other from duress. Shep. Touchst. 61. Met. Con. 28, and note. *Robinson* v. *Gould*, 11 Cush. 55, and cases cited.

The question whether this exception extends to the relation of parent and child does not appear to have been expressly adjudicated. But we find many *dicta* of judges and statements of authors, entitled to great respect, which show that from the earliest times it has been considered as the settled law that the relation of parent and child was within the exception.

In a note to *Bayly* v. *Clare*, 2 Brownl. 275, 276, in the Com mon Bench, Michaelmas term 7 Jac. 1, it is said that "the husband may avoid the deed that he hath sealed by the duress of imprisonment of his wife or son, but not of his servant." This is evidently the same case stated by Sergeant Rolle in his Abridgment, as follows: "A servant shall not avoid his deed made by duress to his master. M. 7. Ja. B. per Coke. But a son shall avoid his deed by duress to his father. M. 7. Ja. B. per Coke. The husband shall avoid a deed by duress to his wife. M. 7. Ja. B. per Coke." 1 Rol. Ab. 687, pls. 4–6.

Lord Bacon, under the maxim, *Persona conjuncta æquiparatur interesse proprio*, wrote, "So if a man menace me, that he will imprison or hurt in body my father or my child except I make unto him an obligation, I shall avoid this duress, as well as if the duress had been to mine own person." Bac. Max. *reg.* 18.

The same law is explicitly laid down without question by the author of Bacon's Abridgment and by Mr. Dane and by Mr. Justice McLean. Bac. Ab. Duress, B. 5 Dane Ab. 166, 375. *McClintock* v. *Cummins*, 3 McLean, 158, 159.

In *Wayne* v. *Sands*, 1 Freem. 351, the point decided was that a plea, that one Robinson was jointly bound with the defendant, and that Robinson entered into the contract by duress, was bad. The reporter attributes to Wylde, J. the remark that, "if the duress be to a father or brother, and a son enter into bond, this is a duress to the son," and to Twisden, J. the remark that "a man shall in no case avoid his deed by a duress to another, let him be related how he will." The case is too imperfectly

reported to be of great weight, and it is to be observed that the remark attributed to Twisden, J., would exclude the case of husband and wife, in opposition to all the authorities. In the report of the same case, under the name of *Warn* v. *Sandown*, in 3 Keb. 238, it is said that there was "*per curiam* judgment for the plaintiff; this Roberts being no father, husband, wife nor near relation, in which cases the bond would be void."

We are not referred to any modern authorities opposed to the views of the learned judges and authors whom we have cited. The exception in favor of husband and wife is not based solely upon the legal fiction that they are in law one person, but rather upon the nearness and tenderness of the relation. The substantial reasons for the exception apply as strongly to the case of a parent and child as to that of a husband and wife. No more powerful and constraining force can be brought to bear upon a man, to overcome his will and extort from him an obligation, than threats of great injury to his child. Both upon reason and upon the weight of the authorities we are of opinion that a parent may avoid his obligation by duress to his child, and therefore that the ruling of the Superior Court upon this point was correct.

The plaintiff contends that the defence of duress was not open under the pleadings. In a case where the plaintiff declares upon an executory contract, if the defendant relies upon duress, he must specify it in his answer. It is then a substantive fact in avoidance of the plaintiff's case, which must be set up. Gen. Sts. *c.* 129, §§ 17–27. But this is a suit under the Gen. Sts. *c.* 137, and the St. of 1879, *c.* 237, in which the plaintiff sets up that the defendants are in the possession of certain land which they hold "unlawfully and against the right of said plaintiff." The provisions of the practice act above cited do not apply to it. *Taylor* v. *New England Coal Mining Co.* 4 Allen, 577. Any evidence, which goes to show that the deed under which the plaintiff claims the right of possession is invalid, is admissible under the general issue, as it sustains the defendants' denial of the plaintiff's allegations. The evidence of duress was therefore properly admitted. *Exceptions overruled.*