## CORDELIA A. SILSBEE *vs.* PARKER J. WEBBER.

Essex. March 3, 1898. — June 2, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Duress — Conveyance by Woman through Fear of Effect on Husband's Health of threatened Disclosure — Ratification — Law and Fact.*

A woman's son had been accused of stealing his employer's money, had made a confession, and agreed to give security for a certain sum. Upon the employer, with whom she previously had talked about her husband's condition, saying that he should have to tell her husband, who at that time was melancholy, very irritable, and unable to sleep, she said, " Don't do that, you know what his condition is "; and fearing that, if her husband was told of his son's crime, the knowledge would make him insane, in order to prevent the employer from doing so, she executed to him an assignment of her share in her father's estate, under which he collected the money. *Held*, in an action by her to recover it, that it could not be said that the jury would not be warranted in finding that the assignment was obtained by duress. FIELD, C. J., KNOWLTON & LATHROP, JJ., dissenting.

An act done under duress, which is formally valid, may be ratified when the restraint is removed, and the question of ratification is for the jury.

CONTRACT, to recover $1,150, alleged to have been obtained by duress. Trial in the Superior Court, before *Lilley*, J., who ruled that the action could not be maintained; directed the jury to return a verdict for the defendant; and, at the request of the parties, reported the case for the consideration of this court. If the ruling was right, judgment was to be entered on the verdict;

otherwise, the verdict was to be set aside, and the case to stand for trial. The facts appear in the opinion.

The case was submitted on briefs to all the justices.

*J. H. Sisk,* for the plaintiff.

*W. H. Niles & G. J. Carr,* for the defendant.

HOLMES, J. This is an action to recover money alleged to have been got from the plaintiff by duress. In the court below a verdict was directed for the defendant, and the case was reported. The plaintiff's son had been in the defendant's employ, had been accused by him of stealing the defendant's money, had signed a confession, whether freely or under duress is not material, and had agreed to give security for $1,500. There was a meeting between the plaintiff and the defendant, in the course of which, as the plaintiff testified, the defendant said he should have to tell the young man's father, the plaintiff's husband. At that time, according to her, her husband had trouble in his head, was melancholy, very irritable, and unable to sleep, so that she feared that if he were told the knowledge would make him insane. The plaintiff further testified that she previously had talked with the defendant about her husband's condition, and that she begged him not to tell her husband, and told him that he knew what her husband's condition was, but that he twice threatened to do it in the course of his inquiries as to what property she had, and that to prevent his doing so she the next day went by agreement to the office of the defendant's lawyer, and executed an assignment of her share in her father's estate. Her son was present, and, as he says, protested that this was extortion and blood money. It is under this assignment that the money sued for was collected. In the opinion of a majority of the court, if the evidence above stated was believed, we cannot say that the jury would not have been warranted in finding that the defendant obtained, and knew that he was obtaining, the assignment from the plaintiff solely by inspiring the plaintiff with fear of what he threatened to do; that the ground for her fear was, and was known to be, her expectation of serious effects upon her husband's health if the defendant did as he threatened; and that the fear was reasonable, and a sufficiently powerful motive naturally to overcome self-interest, and therefore that the plaintiff had a right to avoid her act. *Harris*

v. *Carmody*, 131 Mass. 51, 53, 54. *Morse* v. *Woodworth*, 155 Mass. 233, 250.

It is true that it has been said that the duress must be such as would overcome a person of ordinary courage. We need not consider whether, if the plaintiff reasonably entertained her alleged belief, the well grounded apprehension of a husband's insanity is something which a wife ought to endure rather than to part with any money, since we are of opinion that the dictum referred to, if taken literally, is an attempt to apply an external standard of conduct in the wrong place. If a party obtains a contract by creating a motive from which the other party ought to be free, and which in fact is and is known to be sufficient to produce the result, it does not matter that the motive would not have prevailed with a differently constituted person, whether the motive be a fraudulently created belief or an unlawfully created fear. Even in torts, the especial sphere of external standards, if it is shown that in fact the defendant by reason of superior insight contemplated a result which the man of ordinary prudence would not have foreseen, he is answerable for it; and in dealing with contributory negligence, the personal limitations of the plaintiff, as a child, a blind man, or a foreigner unused to our ways, always are taken into account. Late American writers repudiate the notion of a general external measure for duress, and we agree with them. Clark, Contracts, 357. Bishop, Contracts, (ed. 1887,) § 719. See *James* v. *Roberts*, 18 Ohio, 548, 562; *Eadie* v. *Slimmon*, 26 N. Y. 9, 12.

The strongest objection to holding the defendant's alleged action illegal duress is, that, if he had done what he threatened, it would not have been an actionable wrong. In general, duress going to motives consists in the threat of illegal acts. Ordinarily, what you may do without liability you may threaten to do without liability. See *Vegelahn* v. *Guntner*, 167 Mass. 92, 107; *Allen* v. *Flood*, [1898] A. C. 1, 129, 165. But this is not a question of liability for threats as a cause of action, and we may leave undecided the question whether, apart from special justification deliberately and with foresight of the consequences, to tell a man what you believe will drive him mad is actionable if it has the expected effect. *Spade* v. *Lynn & Boston Railroad*, 168 Mass. 285, 290. *White* v. *Sander*, 168 Mass. 296. If it

should be held not to be, contrary to the intimations in the cases cited, it would be only on the ground that a different rule was unsafe in the practical administration of justice. If the law were an ideally perfect instrument, it would give damages for such a case as readily as for a battery. When it comes to the collateral question of obtaining a contract by threats, it does not follow that, because you cannot be made to answer for the act, you may use the threat. In the case of the threat there are no difficulties of proof, and the relation of cause and effect is as easily shown as when the threat is of an assault. If a contract is extorted by brutal and wicked means, and a means which owes its immunity, if it have immunity, solely to the law's distrust of its own powers of investigation, in our opinion the contract may be avoided by the party to whom the undue influence has been applied. Some of the cases go further, and allow to be avoided contracts obtained by the threat of unquestionably lawful acts. *Morse* v. *Woodworth*, 155 Mass. 233, 251. *Adams* v. *Irving National Bank*, 116 N. Y. 606. *Williams* v. *Bayley*, L. R. 1 H. L. 200, 210.

In the case at bar there are strong grounds for arguing that the plaintiff was not led to make the assignment by the duress alleged. They are to be found in the fact that the plaintiff sought the defendant; in her testimony that, when she made the assignment, she wanted the defendant to have full security for all her son owed him; and in the plaintiff's later conduct; — but we are considering whether there was a case of duress for the jury.

The assignment was on October 10, 1894. Before March 12, 1895, the plaintiff had joined with her sisters in employing a lawyer to secure her share in her father's estate, intending it to be paid over to the defendant. On March 12, 1895, to the same end, she signed a petition for distribution, setting forth the assignment, and afterwards took some further steps, and never made any claim that the assignment was not valid until December 19, 1895, before which time it had come to the knowledge of her husband. Apart from the weight which these facts may give to the argument that the plaintiff did not act under duress, they found an independent one, that if she did act under duress she has ratified her act. The assignment was formally valid. The only objection to it, if any, was the motive for it. *Fair-*

*banks* v. *Snow,* 145 Mass. 153, 154.   Therefore it might be ratified by the plaintiff when she was free.   But the acts relied on were done in connection with a member of the bar, who had been the defendant's lawyer before he undertook to act for the plaintiff, and who plainly appeared to be acting for the plaintiff only in the defendant's interest.   We cannot say that the jury might not find that the later acts of the plaintiff, if not done under the active influence of her supposed original fear, at least were done before the plaintiff had gained an independent foothold, or realized her independence of her rights.   We are of opinion that the case should have been left to the jury.   *Adams* v. *Irving National Bank,* 116 N. Y. 606, 614, 615.

*Verdict set aside, and case to stand for trial.*

KNOWLTON, J.   The report shows no evidence which seems to me to warrant a finding for the plaintiff.   It is not contended that she can prevail in this action on the ground that the parties agreed to compound a felony.

The defendant had detected his trusted clerk in embezzling from him.   He could not certainly know how long the embezzlement had been going on, or how much money had been taken, but very likely he thought that it had been for a long time, and that the amount was large.   The clerk had been in his employment for six years as chief salesman.   It was proper that the defendant should obtain reimbursement if he could.

On account of what her son said, the plaintiff visited the defendant at his home.   She testified that she wanted him to have full security for all her son owed him, and for anything he had stolen, and that she told the defendant so.   She says she understood that her son had agreed to give security for the $1,500 which he admitted that he had stolen.

In all the defendant's dealings with the plaintiff there is not a suggestion that he made a threat, unless it be called a threat to say, when she proposed to give him a chamber set as security, " I do not think that will do, I will have to tell his father "; and to say again once or twice, before the interview ended, that he would tell her husband about the matter.   Ordinarily, it would be right and proper for the defendant, if not his duty, to tell the young man's father what had happened.

In 2 Greenleaf on Evidence, at section 301, is this clause:
" By duress, in its more extended sense, is meant that degree of
severity, either threatened and impending or actually inflicted,
which is sufficient to overcome the mind and will of a person
of ordinary firmness. . . . Duress *per minas* is restricted to fear
of loss of life, or of mayhem, or loss of limb; or, in other words,
to remediless harm to the person. If, therefore, duress *per
minas* is pleaded in bar of an action upon a deed, the plea must
state a threat of death, or mayhem, or loss of limb. . . . A fear
of mere battery, or of destruction of property, is not, technically,
duress, and therefore is not pleadable in bar." Bishop, in his
work on Contracts, at section 715, defines duress as " any unlaw-
ful physical force, applied or threatened to the person of the
party, or of the party's husband, wife, parent, or child, through
constraint of which he, in form, consents to what he otherwise
would not."

While the law in regard to duress *per minas* in some of the
late cases is less strict than that stated by Greenleaf, in none of
them, so far as I am aware, is this ground of avoiding a contract
changed in its general character, or in the principles on which
it is founded. The distinction still remains between threats of
grievous injury, and legitimate arguments founded on disclosed
intentions of the party using the arguments as to his lawful
conduct affecting the other party. The word "threat" implies
intentional detriment. The fundamental reason for depriving
one of the benefits of his contract in such cases is that he was
guilty of a wrong in obtaining it, and that his wrong was inju-
rious to the other party in inducing the making of it. No con-
tract can be set aside on the ground of duress *per minas* without
the concurrence of these conditions. It is not enough to set
aside a contract that the maker of it yielded to motives founded
on legitimate arguments, even though the inducements rested in
part upon statements by the other party of what would be done
if the contract should not be made. It must be shown that the
will is overcome by an improper and wrongful influence, pro-
ducing fear which he has not sufficient strength to withstand.
If the other party to the contract is innocent, his defence can-
not prevail. *Fairbanks* v. *Snow*, 145 Mass. 153. The cases in
which it is held, in this jurisdiction and elsewhere, that one

whose will is overcome, and who is induced to execute a contract by threats of prosecution and imprisonment for a crime, made by one who reasonably believes him to be guilty of the crime, may avoid the contract on the ground of duress, rest upon the principle that it is an abuse of process, and a misuse of the machinery of the law, which the law will not permit, to extort the collection of a private debt, or to procure any other private benefit by proceedings intended only to impose punishment in the interest of the public. It is equally a wrong and an injury to accomplish the same result through threats of such an abuse of process. *Morse* v. *Woodworth*, 155 Mass. 233, 250.

The burden of proof is on the plaintiff to show that the defendant obtained the contracts by threatening to inflict injury upon her husband. A fair interpretation of the evidence indicates that the defendant's reference to her husband was in no sense a threat, but merely a natural statement, when the plaintiff offered inadequate security, that he should see whether the young man's father, who was an owner of houses and lands, was willing to furnish the security which his son had promised. If it was more than that, and was also a legitimate appeal to a motive which the plaintiff might have had to save her husband from the grief and sorrow that knowledge of the facts would be likely to bring to him, or to save herself from additional pain in sharing her husband's trouble, it would hardly be contended that the contracts would thereby be rendered voidable. A party endeavoring to obtain a contract from another may legitimately appeal to all proper motives which will induce the other to agree to his terms.

The only element in this case, as it seems to me, on which a doubt in regard to the proper decision of it can arise, is the testimony as to the condition of the plaintiff's husband. The plaintiff's testimony on this point was as follows: "He was suffering with a mental trouble, which made him very irritable. He suffered pain continually in the head, was melancholy and was unable to sleep. . . . He was attending to his business at the time of the trouble with Webber. He had various estates about town, and was collecting the rents, and looking after his business every day." There was testimony from other members of the plaintiff's family in regard to the husband's condition, but none more

favorable to her than this. They all agreed that he was collecting his rents, taking charge of repairs, and attending to his business generally at the time when the contracts were made. She testified that she believed that knowledge of the charges against her son would make her husband insane; but there is not a word of testimony to show that the defendant knew of this belief if she entertained it. She testified that she had previously talked with the defendant about her husband's condition; but this must mean that she spoke about his condition as it was, and not about her belief that this information would make him insane, which, so far as appears, was never disclosed until the trial. In connection with the making of the contracts there was no conversation about her husband's condition except a reference to it when the plaintiff said, in answer to the defendant's statement that he should have to tell him, "Don't do that, you know what his condition is."

It is a familiar rule of law that fraud, or wrong of any kind, is never to be presumed. It cannot be inferred from evidence which is as consistent with right as with wrong. I can see nothing in the evidence that tends to show that the defendant was guilty of any wrong towards the plaintiff. What he proposed could do no direct harm to the person or property of the plaintiff or of her husband. At most, there was merely a possibility or a probability of suffering and harm from reflection upon facts for whose existence the defendant was not responsible, and which the husband would be likely to learn at some time from others if the defendant did not tell him. But this probability, viewed from the defendant's knowledge and information, was no greater than would be expected in the case of any man who was irritable, melancholy, and unable to sleep from trouble in his head, yet whose ailments were not so severe as to prevent him from managing a somewhat extensive and important business. Reading the testimony without favor or prejudice, I do not see how an imputation against the defendant of an improper purpose in saying to the plaintiff that he should have to tell her husband can be founded on anything more than conjecture. The presumptions are in favor of honesty and fair dealing, and the testimony is to be interpreted accordingly.

Moreover, there is nothing to show a belief on the part of the

defendant that the statement that he should tell her husband would overcome the plaintiff's will. Upon his understanding of the facts, such a suggestion would not be expected to overcome the will of a person of ordinary firmness, and there is no evidence that she was supposed by him to be, or that she was in fact, less firm than other women. Whether the rule so often stated in the books, that to avoid a contract on the ground of duress by threats, a threat must be such as would overcome the will of a person of ordinary firmness, be of universal application or not, it undoubtedly furnishes a correct guide in cases in which there is nothing to show that the party who seeks to avoid the contract was not of ordinary courage and firmness.

Upon an extended examination of the authorities I have found no case in which a contract has been set aside on the ground of duress on such evidence as appears in this case. I think that the ruling of the Superior Court was correct.

The Chief Justice and Mr. Justice LATHROP concur in this dissent.