MARY A. WEBB *vs.* GEORGE E. LOTHROP & another.

Suffolk.    October 20, 1915. — May 17, 1916.

Present: RUGG, C. J., LORING, CROSBY, & CARROLL, JJ.

*Bills and Notes*, Validity, Ratification. *Mortgage. Equity Jurisdiction*, To have note and mortgage declared void for duress. *Duress. Equity Pleading and Practice*, Appeal, Exceptions to ruling of master. *Compounding of Felony. Evidence*, Relevancy, Remoteness.

A note and a mortgage securing the note, procured to be signed by duress exerted upon the maker and mortgagor, are voidable merely and not void, and therefore can be ratified and confirmed by the maker and mortgagor.

If a woman under duress executes and delivers a note and a mortgage securing it

---

in consideration of a return to her of documents which might have been the basis of criminal proceedings against her husband and also of the transfer to her of several mortgages, and, during the next eight months, while consulting counsel, makes monthly payments of interest upon the note, destroys the documents incriminating her husband and realizes $4,870 upon the mortgages transferred to her, she must be taken to have ratified and confirmed the note and mortgage so that she is unable to maintain a suit in equity to have them declared void and to enjoin the foreclosure of the mortgage.

Where at the hearing of a suit in equity the evidence was taken by a commissioner, the plaintiff, on an appeal from a decree dismissing the bill, may rely upon contentions not made before the trial judge.

In the present suit to enjoin the foreclosure of a mortgage, on an appeal from a decree dismissing the bill, the evidence having been taken by a commissioner and being before this court, the plaintiff for the first time contended that the evidence showed that the note and mortgage were void because their consideration was the compounding by the defendant of a felony of the plaintiff's husband or the stifling of a criminal prosecution against him, but this court *held,* that, upon the facts and inferences to be drawn from them, the plaintiff had failed to sustain the burden of proving that there was a contract to compound a felony or to stifle a criminal prosecution.

In a suit in equity, one of the issues to be heard by a master was the extent of indebtedness between the plaintiff's husband and the defendant, and the master found that certain notes of the plaintiff's husband never were protested by the defendant and that no specific demand was made upon them until a general demand for the settlement of the entire indebtedness, and that the course of dealing between the plaintiff's husband and the defendant had been such that there was an implied waiver of the necessity of demand, notice or protest. The plaintiff offered to show what occurred as to another mortgage held by the defendant "for the stated purpose of showing a custom between" the same parties "as to their dealing with mortgages similar to those in issue in this case." The master excluded the evidence subject to the plaintiff's exception. *Held,* that, it not appearing that the custom thus offered to be proved was different from that found by the master, nor what period of time the evidence referred to, the exception must be overruled.

CARROLL, J. This is a bill in equity to prevent the foreclosure of a mortgage given by the plaintiff to the defendant Barry. The plaintiff's husband was indebted to Barry and had sold to him two notes secured by mortgages of personal property, knowing that the makers were not the owners of the property described therein. At the hearing in the Superior Court the evidence was taken by a commissioner. The judge * found that the plaintiff executed the note and mortgage described in the bill and was coerced to do so through fear of her husband's arrest, her state of mind being the result of Barry's conduct. The judge also found that while it might be questioned whether the acts of

---

* *Pierce,* J.

Barry amounted to a technical duress, "there can be no doubt that the influence was sinister, undue and destroyed her freedom of will."

The judge made a memorandum of his findings and by an interlocutory decree the cause was referred to a master to determine, among other things, the existing indebtedness of Webb to Barry. The master reported, and upon further hearing a decree was entered dismissing the bill.

1. The evidence shows that the note and mortgage, sought to be set aside by these proceedings, were executed on February 13, 1913, when Barry transferred to the plaintiff the two fictitious mortgages which the master has found were of no value. Barry, at the same time and as a part of the consideration for the note and mortgage in suit, assigned to Mrs. Webb several mortgages from which, according to the findings of the master, she already has received in money or its equivalent the sum of $4,870.

These two fictitious mortgages were destroyed by the plaintiff immediately after they came into her possession. They were destroyed to prevent their use as evidence of her husband's guilt. From February, 1913, to October of the same year, during which time Mrs. Webb consulted counsel, she paid the interest on the note each month, except in the month of July, when she was summoned as trustee of the defendant. She has not returned, nor has she offered to return any of the property which passed to her at the time of the delivery of the mortgage. This bill was brought December 2, 1913.

If we assume that the threats made by Barry so influenced and overcame the mind of the plaintiff that they amounted to duress, see *Bryant* v. *Peck & Whipple Co.* 154 Mass. 460, even then the note and mortgage given by her were not void. They were at most voidable, and as such could be ratified and confirmed by her acquiescence and consent. *Silsbee* v. *Webber,* 171 Mass. 378. *Somes* v. *Brewer,* 2 Pick. 183. By paying the interest each month from February to October when free from all undue influence and when she had the aid of independent advice, she so clearly manifested her intention to affirm the contract that she is now bound by it.

Further, she has destroyed a part of the consideration and has made no offer to restore the remaining securities which she re-

ceived from Barry and from which she has realized the sum of
$4,870. In order to rescind or avoid the contract she must return
to the defendant that which she has received from him, and failing
in this, she is not entitled to relief. She cannot successfully con-
tend that the contract is void, so as to be relieved of its obliga-
tions, and valid in order to enjoy its benefits. *DeMontague* v.
*Bacharach,* 181 Mass. 256. *Drohan* v. *Lake Shore & Michigan
Southern Railway,* 162 Mass. 435. *Moore* v. *Massachusetts Benefit
Association,* 165 Mass. 517. *Morse* v. *Woodworth,* 155 Mass. 233.
*Snow* v. *Alley,* 144 Mass. 546.

2. The plaintiff contends that the note and mortgage described
in the bill were given to Barry because of his agreement not to
prosecute her husband, and thus constituting the consideration
of a contract to compound a felony, they are void. This question
was not brought to the attention of the trial court, but, as the
evidence is reported, we must decide it. The facts and inferences
to be drawn do not satisfy us that the burden resting on the
plaintiff has been sustained. We find there was no agreement to
suppress a criminal proceeding; even if a crime was in fact com-
mitted, which we do not decide.

To prove this illegal agreement the plaintiff relies on a conver-
sation with Barry over the telephone, in which he asked her to
give him a mortgage on her property and in return for this he
would return the spurious mortgages her husband had given to
him. The plaintiff alleges that Barry said "Well, it has got to be
fixed up, and right away; if not, I shall have Mr. Webb arrested
and sent where he belongs," and that she replied "Mr. Barry, you
would not do anything so mean as that, would you?" This conver-
sation was denied by Barry; his stenographer corroborated him,
and testified that on the day in question Mrs. Webb called for
Barry and was informed he was not in. Later on the same day,
Mrs. Webb was told, "Mr. Barry has been in, and I told him your
message, and he said 'Any communications regarding this mort-
gage were to be consulted with Mr. Eldredge.'" In addition the
stenographer testified that Webb, the husband, called her to the
telephone some time later, and after asking her if she was alone,
said, "Didn't you hear Barry say he was going to have me ar-
rested?" Receiving a negative reply, he said, "I am going to
tell my lawyer you said it."

It is doubtful whether this conversation ever took place as contended by the plaintiff. But even if her version of it is correct, it is not enough to establish an agreement to refrain from prosecuting her husband. It was at most a threat to prosecute him, and it further appears that Barry did not see the plaintiff for several weeks thereafter, when they met in a lawyer's office to execute the deed of assignment and mortgage. The settlement of Webb's indebtedness to Barry and the securing of the same, in the meantime, were in charge of their attorneys, and during all their negotiations there is nothing in the evidence to indicate any agreement or suggestion of an agreement to compound a crime.

It is true that Mr. Leahy, who represented the Webbs, testified that one reason why the note and mortgage were given was to save Webb from being accused of a crime, but there is no evidence showing any such agreement between him and Barry, or between him and any representative of Barry. Mr. Leahy no doubt supposed, as did Mrs. Webb, that Webb would not be criminally prosecuted if she signed the note and the mortgage upon her property securing it. But this mere expectation did not amount to a contract. In short, without reciting all the facts, we find that there was no contract to compound a felony or to stifle a criminal prosecution.

3. In order to determine the extent of the indebtedness existing between Webb and Barry, the master examined into the liability of Webb to Barry, arising out of the former's indorsement in blank of certain mortgage notes, and on this question the master reported, "no one of the notes in question was ever protested and that no specific demand, oral or in writing, was ever made by Barry upon Webb for payment of said notes or any of them, until the general demand for all that was due was made in December, 1912, as above set forth. I find that the course of dealing between Barry and Webb, both before and after the eight notes here in issue were indorsed . . . had been such that there was an implied waiver on the part of Webb of the necessity of demand, notice or protest as to any of said notes."

The plaintiff offered to show what occurred with reference to another mortgage held by Barry, "for the stated purpose of showing a custom between Barry and Webb as to their dealing with mortgages similar to those in issue in this case." This offer was

excluded and the plaintiff excepted. The master found what the course of dealing was between the parties. There is nothing to show how or in what way the evidence offered contradicted that already introduced, showing the practice and dealings of Webb and Barry, nor does it appear that this evidence had any tendency to show a different course of dealing. There being no sufficient offer of what the plaintiff expected to prove in conflict with the finding on this point, the record fails to show that any harm was done her by the ruling of the master excluding the testimony. *Cook* v. *Enterprise Transportation Co.* 197 Mass. 7, 10. *Noyes* v. *Meharry,* 213 Mass. 598, 600.

In addition to this it nowhere appears that the evidence excluded, bearing on the course of dealing, was not rightly excluded as being beyond the limits of time which might reasonably have been fixed by the master. See *Commonwealth* v. *Ryan,* 134 Mass. 223, 224. If we assume the offer of proof included several additional notes and mortgages, there was no error in excluding the evidence, for the reasons stated.

The form of the decree has not been questioned by the parties and we do not consider it. The decree is affirmed.

*So ordered.*

*J. F. Warren,* for the plaintiff.
*C. F. Eldredge,* for the defendants.