SAMUEL ROSENBLOOM, trustee, & another *vs.* SAUL
KAPLAN.

Middlesex.    October 7, 1930. — November 28, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Duress.    Contract,* Validity.    *Equity Jurisdiction,* Rescission.

While in equity there need not be threat either of bodily harm or of criminal prosecution to constitute duress which will render a mortgage and mortgage note voidable, and it suffices that the person threatened is in fact coerced and deprived of his freedom of will by a wrongful influence, impelling him to execute and deliver such note and mortgage, which he would not have done or consented to in the exercise of his free will and deliberate, independent judgment, such duress is not shown, in a suit in equity to have a second mortgage and mortgage note held by the defendant declared void, by the mere facts, that, after the defendant, who also was the holder of a first mortgage on the premises in question, orally had agreed that he would assent to a lease of the property to one who intended to tear down a building thereon occupied by tenants and after some of the tenants, hearing of the lease, had begun to move out, the defendant had refused so to assent unless the plaintiff would pay him a certain sum; that, upon the plaintiff's remonstrating that, if he did not "get" the tenant, he would not be able to satisfy the conditions of the first mortgage, the defendant had stated to the plaintiff, "If you don't make payments we will foreclose the [first] mortgage and take the property and we will not assent to the lease unless you pay . . . [that sum]"; and that, after further negotiations, the plaintiff executed the second mortgage and mortgage note for one half that sum, and the defendant in writing assented to the lease.

It appearing, in the suit above described, that the plaintiff, with knowledge of the facts, had made payments of interest upon the second mortgage on two occasions, and there being nothing to show that, when he made such payments, the plaintiff was not free from any coercion or illegal influence which the defendant had theretofore put upon him, it must be assumed that when the payments were made they were made with an intention to affirm the contracts and obligations thereunder, from which it followed that the second mortgage and note, even if originally voidable because procured through duress, were ratified by conduct of the plaintiff after the restraint was removed.

The facts above stated showed a legal consideration for the note and second mortgage which was additional to the prior oral and repudiated

agreement of the defendant to assent to the lease, in that the plaintiff received a signed assent to the lease and thereby was able to enforce the oral agreement, whether such agreement was or was not within the protection of G. L. c. 183, § 3, and c. 259, § 1.

BILL IN EQUITY, filed in the Superior Court on September 5, 1929, and afterwards amended, described in the opinion.

The suit was referred to a master, who found that the defendant assented in writing to the lease to Alexander on June 6, 1929. Other material facts found by the master are stated in the opinion. No objections to the master's report were filed and the suit was heard by *Qua, J.,* by whose order there were entered an interlocutory decree confirming the report and a final decree granting the relief sought. The defendant appealed.

*M. Barlofsky,* for the defendant.

*B. Silverblatt,* for the plaintiffs.

PIERCE, J. This is a bill in equity to compel the defendant to cancel and surrender a note, and to discharge a mortgage of $1,050 securing said note, given by the plaintiffs to the defendant, on two grounds: (1) that the note and mortgage were obtained by the defendant by duress on the plaintiff Price, and (2) that there was no consideration for the note and mortgage. The defendant's answer denies that there was any duress, or that there was any lack of consideration for said note and mortgage; it sets up laches on the part of the plaintiffs, and ratification of the note and mortgage by reason of the payment of interest. The case was referred to a master who duly made a report to which no objections were filed by either the plaintiffs or the defendant. The master's report was confirmed by an interlocutory decree to which no appeal was taken. A final decree was entered ordering the defendant to cancel said note and discharge said mortgage with costs. The case is before this court on the appeal of the defendant from the final decree.

The material facts found by the master, which are taken to be true, are substantially as follows: On February 21, 1929, the defendant, in writing, agreed to convey for $6,000 the premises involved in this case to Louis Price,

or to the party or parties said Price might designate at the time of the transfer and delivery of the deed, within sixty days from the date of the agreement. At the time of the signing of the agreement $500 was paid, and the balance was to be paid in monthly instalments by note of said Price for $5,500, the whole to be paid in one year from the date of the note, with interest at the rate of six per cent per annum payable monthly. The note was to be secured by a power of sale mortgage in the usual form. Early in April, 1929, it was agreed that the title should be taken in the name of Samuel Rosenbloom, as trustee, for the benefit of Price.

Sometime after February 21, 1929, and before the delivery of the deed on May 21, 1929, one Alexander " approached " Price for the purpose of obtaining a lease of the said premises for a period of ten years " with the privilege of removing the main building on the premises and building thereon a gasoline filling station." Alexander desired that the mortgagee should assent to the lease. Price consulted one Barnet Kaplan, who had full authority to act as agent for his son, the defendant, with reference to the premises, and Barnet Kaplan told Price " he wanted two suitable persons to act as guarantors of the covenants in the lease." This fact was reported to Alexander, who asked Price for and received a tentative form of lease which he was desirous of showing to his counsel and prospective guarantors. This lease had a form of assent for the defendant, as mortgagee, to sign. Alexander made inquiry as to the cost of a surety company bond and found it prohibitive; he also furnished counsel for the defendant with the names of two persons who, he thought, might sign the lease as guarantors but apparently he did not approach them. He told Price " that he could not or would not obtain any guarantors " and Price informed Barnet Kaplan of this fact. Barnet Kaplan then suggested to Price that Alexander make a deposit of $5,000. This Alexander refused to do, but said he would make a deposit of $500 on condition that it would be returned to him when the gasoline station was completed. At

this stage of the negotiations Price learned that the premises were affected by a real estate attachment in an action or suit brought by one Palefsky. He informed Barnet Kaplan that Alexander would make a deposit as above mentioned. He then asked how he was to get a deed with the attachment on the property, and was told by Kaplan that he was negotiating with Palefsky to remove it and that he (Price) " would have to wait to get the deed." Price then said, " If you are satisfied with $500 as a deposit and if you and your son will assent to lease without sureties, I will wait for the deed until the attachment is discharged," and " Barnet Kaplan so agreed on behalf of Saul Kaplan." " This understanding or agreement was not reduced to writing." Later, but prior to April 17, 1929, it was orally agreed between Price, Alexander and Barnet Kaplan, that if Alexander would deposit $500 in cash at the time of the execution of the lease, as a guaranty that he would put up the filling station as agreed to and provided for in the lease, Barnet Kaplan would have his son, the defendant, assent to the lease as mortgagee. At the hearing before the master it was agreed that the attachment was filed on April 10, 1929, and discharged on May 16, 1929. On May 21, 1929, the defendant conveyed the premises to the plaintiff Rosenbloom, as trustee, for the benefit of Price, in accordance with the agreement of February 21, 1929. This conveyance was made solely because of the incapacity of the wife of Price, Rosenbloom having no financial or beneficial interest in the premises. At the time of the conveyance Rosenbloom, as trustee, executed and delivered a note and mortgage to the defendant in accordance with the agreement, and the note and mortgage were assented to by Price in accordance with the terms of the trust deed. On May 21, 1929, as a part of the above transaction, Barnet Kaplan, pursuant to an oral agreement made late in 1928, or in January, 1929, which is set out in the report, returned to Price a note for $1,100 dated July 18, 1924, and an instrument dated July 18, 1924, which also appears in the report. The last-named instrument bears the following notation, with-

out signature: " The above is hereby cancelled insofar as of July 18, 1924 is concerned and no more."

Some days before June 6, 1929, the day named by the parties for the execution of the lease to Alexander, Barnet Kaplan informed Price that he would not have his son assent to the lease unless Price would pay $2,100, which was the sum Barnet Kaplan, under circumstances shown in the report, had lost on a mortgage dated September 9, 1920, and given to him by Annie Fudim, together with the note of July 18, 1924, both of which, as above stated, were cancelled at the time of the passing of the papers on May 21, 1929.   Price said, " Why Mr. Kaplan you have already agreed to assent to the lease," and " Some of the tenants are moving out because they know of the lease," and " Now at the very last moment you are trying to squeeze $2,100 out of me and if I do not get Alexander as a tenant I will not be able to pay your interest and payments on principal."   In reply Kaplan said: " If you don't make payments we will foreclose the mortgage and take the property and we will not assent to the lease unless you pay $2,100."   After other talk Price offered $500, then $1,000, and Kaplan said: " Make it fifty-fifty," meaning one half of $2,100, and Price assented.   Price did not have the cash to make the payment, and it was understood that Rosenbloom, as trustee, would execute a mortgage and note for $1,050 and that Price would assent thereto.

On June 6, 1929, after a conversation as to how payments should be made under the last named mortgage, the attorney for Kaplan inserted in the mortgage the clause in reference to the amount and to payments.   Price " read the mortgage over very carefully," and the mortgage and note were then signed by Rosenbloom, as trustee, pursuant to the terms of the agreement, and assented to by Price pursuant to the terms of the trust deed dated May 21, 1929.   The defendant, at the master's hearing, " admitted that he did not pay either Price or Rosenbloom any money for this note and mortgage and that he was owed no money by either of them excepting the first

mortgage hereinbefore mentioned for $5,500 "; and the master found, " as a fact, that the assenting by Saul Kaplan to the Alexander lease was the consideration for this mortgage." It was further admitted at the master's hearing that Price made two payments of interest due on the note and mortgage after June 6, 1929, and before September 4, 1929, when the bill of complaint was filed.

When the lease was executed, Alexander, the lessee, deposited the sum of $500 in the joint names of his attorney and the attorney representing the defendant, as a guaranty that the filling station would be completed by the lessee. The filling station was in fact thereafter completed by Alexander, and the sum of $500 was duly returned to him. The mortgage and lease after delivery were both given to the attorney for Alexander to be recorded simultaneously. It was admitted at the hearing before the master, and the master finds, " that neither said Price nor said Rosenbloom were threatened with criminal prosecution or bodily harm by Barnet Kaplan, Saul Kaplan nor anyone else in order to obtain the mortgage and note in dispute."

As respects the plaintiffs' complaint of duress, we assent to the modern view that at least in equity there need not be threat either of bodily harm or of criminal prosecution to constitute duress, and that it suffices that the person threatened is in fact coerced and deprived of his freedom of will by a wrongful influence which impels him to enter into an agreement or to consent to a disposal of property which he would not have entered into or consented to in the exercise of his free will and deliberate, independent judgment. *Harris* v. *Carmody*, 131 Mass. 51. *Morse* v. *Woodworth*, 155 Mass. 233, 250. *Silsbee* v. *Webber*, 171 Mass. 378, 380. *Lajoie* v. *Milliken*, 242 Mass. 508, 525. See Williston on Contracts, (8th ed.) § 1602; Pollock on Contracts, (9 Eng. ed.) 648. That principle applied to the facts herein disclosed shows no right in the plaintiffs to the relief sought by the bill of complaint. Moreover, if the facts did prove wrongful influence and coercion of the plaintiff Price,

and that he was induced thereby to deliver the note and mortgage to the defendant, such note was not void but voidable and could be ratified by conduct after the restraint was removed. *Silsbee* v. *Webber, supra. Webb* v. *Lothrop,* 224 Mass. 103. After the execution of the note and mortgage and before the bill of complaint was filed, the plaintiff made payments of interest due on the note on two occasions. There is nothing in the record to indicate that the plaintiff Price, when he made these payments, was not then free from any coercion or illegal influence which the defendant had theretofore put upon him; and, therefore, it must be assumed that when the payments were made they were made with an intention to affirm the contracts and obligations thereunder. It follows that the plaintiffs are bound by the obligations of the note and mortgage so far as the defence thereto rests upon alleged duress. We are of opinion that the note and mortgage which the plaintiffs seek to have cancelled for want of consideration were supported by a benefit to the maker of them which was legal and was additional to the prior oral and repudiated agreement of the defendant, in that the plaintiffs received a signed assent to the lease in the form provided in the lease for the mortgagee to sign, and thereby was able to enforce the oral agreement whether such agreement was or was not within the protection of G. L. c. 183, § 3, and c. 259, § 1, as the defendant contends it was. It follows that the decree must be reversed and a decree entered dismissing the bill with costs.

*Decree accordingly.*