CAPPY'S, INC. *vs.* FRANK DORGAN & others.

Bristol.   December 10, 1942. — February 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Duress. Labor and Labor Union. Contract,* Validity, With labor union. *Evidence,* Relevancy and materiality.

In a suit in which the plaintiff, an employer, alleged that an agreement between him and a labor union for the payment of money by him in settlement of a claim for wages by his employees had been procured from him by duress and sought its cancellation, evidence as to whether such wages were due the employees was relevant and admissible on the issues of the defendants' good faith and of duress.

Duress compelling an employer to make a contract with a labor union to pay money in settlement of a claim by his employees for back wages was not shown where, although the employees had struck for the purpose, among others, of forcing payment of such wages, the employer, aided by counsel, instead of seeking redress in the courts against the strike, negotiated with the union, succeeded in reducing the amount of the claim for wages, settled the strike by making the contract in which it was also provided that the parties would confer respecting an employment agreement, and later made a closed shop agreement with the union.

BILL IN EQUITY, filed in the Superior Court on May 16, 1940.

The plaintiff appealed from decrees entered by order of *Greenhalge,* J.

*H. Wise,* (*S. H. Green* with him,) for the plaintiff.

*G. E. Roewer,* for the defendants.

RONAN, J.   This is a bill in equity which alleges that the plaintiff, to secure the termination of an "unfounded illegal strike and picketing," was forced by intimidation, duress and threats exerted upon it by a voluntary association,

known as Local 161 of the Hotel and Restaurant Employees' International Alliance and Bartenders' International League of America, hereafter referred to as the union, to execute on April 27, 1940, an agreement to pay the union $1,000 in instalments, all of which have been paid, although all except the first have been paid, in accordance with a stipulation between the parties, to a third person to hold to await the decision in this case. The bill sought the cancellation of the agreement, the return of the money, and the assessment of damages. The plaintiff has appealed from interlocutory decrees denying its motion to recommit the case to the master and overruling its exceptions to the master's report, and from a final decree dismissing the bill.

The plaintiff was engaged in operating "a so-called dine and dance place of the night club variety" where regular hours were from four o'clock in the afternoon until one o'clock on the following morning, except Saturday when the place closed at midnight. Business did not reach its peak until eight o'clock and usually continued at that level until closing time. One Kaplan, its treasurer and manager, executed in duplicate a contract with the union on March 2, 1939. The contract as printed provided for a weekly wage for certain classes of employees including waiters and waitresses. At the suggestion of Kaplan, there was written in the margin of the contract retained by him, that the compensation of waitresses should be at the rate of twenty-five cents an hour and that of the waiters at thirty-seven and one half cents an hour. This contract called for the employment of only members of the union in good standing as long as they were available and was to continue in operation until February 23, 1940. From March 2, 1939, until April 24, 1940, some of the employees reported, in accordance with instructions, as early as five o'clock in the afternoon, while the majority of them arrived at seven o'clock. They all remained until closing time. The waitresses received $1 a night and the waiters $1.50, irrespective of the number of hours they were on the premises, and until January 27, 1940, signed receipts each week when they were paid, acknowledging full satisfaction on account of wages,

although no amounts were stated in the receipts. The employees, all of whom had become members of the union, conferred with Dorgan, the business agent, and Pratt, the secretary, in the latter part of 1939, in reference to the difference between the rate of their wages as set forth in the contract of March 2, 1939, and what they were paid. On the refusal of Kaplan to pay this alleged difference on January 30, 1940, the employees immediately went on a strike, which was terminated February 1 after a conference with the State board of conciliation and arbitration, by the execution of a stipulation by which the parties agreed to comply with the contract of March 2, 1939. The plaintiff agreed to install a time clock and the employees agreed to refer their claims for the payment of these alleged back wages to the union for final action. The plaintiff continued to pay the same amount of wages. Kaplan was found not guilty on April 18, 1940, in a District Court on a complaint charging him with the nonpayment of wages. None of the employees was present in court. The employees had authorized Dorgan to call a strike and the union voted similar action. A strike began on April 24, 1940. The plaintiff's premises were picketed but there was no disorder. Kaplan and the plaintiff's attorney went to the office of the attorneys for the union on April 27, 1940, and after a conference the parties executed a contract by which the plaintiff agreed to pay $1,000 to the union in settlement of the dispute concerning back wages. The plaintiff paid $160, and has paid the balance in the monthly payments of $70 to a third person in accordance with an agreement made between the parties subsequently to filing this bill in equity. The contract stated that it should not be considered as an admission by the plaintiff of any liability in reference to this claim for back wages. It also contained a provision by which the parties agreed to confer for the purpose of making a new collective bargaining agreement. Such an agreement calling for a closed shop was executed by the parties on May 13, 1940. Three days afterwards this suit was commenced.

The master, in addition to the findings we have already

stated, found that the difference between the amount of compensation to be paid to the waiters and waitresses in accordance with the contract retained by Kaplan and the amounts actually paid to them amounted to $1,342; that these employees agreed to work at the wages that they received; that prior to February 1, 1940, they did not contemplate any action against the plaintiff to recover back wages; that thereafter they became dissatisfied in not obtaining a new working agreement and they struck on April 24, 1940, for the purpose of securing a new contract in place of the contract of March 2, 1939, which had expired, and also for the purpose of securing an adjustment of the wages claimed to be due. The main difficulty preventing the parties from agreeing upon a new contract was this claim for back wages, although there was a difference in reference to the wages of the bartenders. The master also found that "no irreparable damage to the business or reputation" had been sustained by the plaintiff.

All the exceptions to the master's report are either to findings made by the master which, it is contended, are not supported by the evidence, or to his failure to make certain findings, save the eighth exception, which was based upon the introduction of evidence on the question whether any back wages were due to the employees. In the absence of a report of the evidence, we cannot say that the findings attacked were not supported by the evidence, or that the master ought to have made further findings. Exceptions of this kind which rest merely upon the assertion of counsel do not call for any review of the action of the master. Exceptions to a master's report cannot be sustained unless error appears upon the face of the report itself. *Chopelas* v. *Chopelas*, 303 Mass. 33. *Anderson* v. *Connolly*, 310 Mass. 5. *Leventhal* v. *Jennings*, 311 Mass. 622. The evidence as to the claim for back wages was properly admitted. It related to the good faith of the defendants and bore directly on the issue whether the agreement for the payment of this claim resulted from duress. The exceptions were properly overruled. The denial of the motion to recommit for the purpose of securing a report of certain portions of the evi-

dence and of having various exhibits incorporated in the report was free from error. *Epstein* v. *Epstein,* 287 Mass. 248, 254. *Pearson* v. *Mulloney,* 289 Mass. 508, 512–513. *Israel* v. *Sommer,* 292 Mass. 113, 119. *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55, 60–61.

The plaintiff contends that it was compelled to pay $1,000 under duress, occasioned by a strike which was maintained for the purpose of compelling it to make this payment and also for the purpose of requiring it to execute a closed shop agreement with the union, and that, consequently, the strike itself was illegal. It is settled that a person whose will and judgment are overcome by threats, fear or some other influence, and who is thereby compelled to execute a contract that he would not have made in the free exercise of his will and independent judgment, may avoid the contract on the ground of duress. *Bryant* v. *Peck & Whipple Co.* 154 Mass. 460. *Morse* v. *Woodworth,* 155 Mass. 233. *Silsbee* v. *Webber,* 171 Mass. 378. *Webb* v. *Lothrop,* 224 Mass. 103. *Stevens* v. *Thissell,* 240 Mass. 541. *Rosenbloom* v. *Kaplan,* 273 Mass. 411. *Freeman* v. *Teeling,* 290 Mass. 93. *Fleming* v. *Dane,* 298 Mass. 216.

The purpose of a strike is to exert pressure upon an employer to compel him to comply with the wishes of his striking employees. It is a common method adopted by employees engaged in an economic struggle with their employer. A strike for a lawful objective and conducted by lawful means is a legitimate weapon in waging an industrial dispute, and the pressure that it generates and exerts against the employer is not without legal justification and, consequently, does not constitute an actionable wrong against him. *Pickett* v. *Walsh,* 192 Mass. 572. *Minasian* v. *Osborne,* 210 Mass. 250.

The execution by the employer of an agreement with his employees that is brought about solely by such a strike does not constitute duress because the agreement does not result from any pressure or influence that is illegal or wrongful. *Foss* v. *Hildreth,* 10 Allen, 76. *Taylor* v. *Jaques,* 106 Mass. 291. *Porter* v. *New York, New Haven & Hartford Railroad,* 205 Mass. 590. *Lajoie* v. *Milliken,* 242 Mass.

508. Am. Law Inst. Restatement: Contracts, § 492. Williston (Rev. ed.) Contracts, § 1606. But a strike for an illegal purpose is a tort even though it was also conducted for other purposes which were lawful. *Baush Machine Tool Co.* v. *Hill,* 231 Mass. 30. *Folsom Engraving Co.* v. *McNeil,* 235 Mass. 269. Even if we assume that a strike to secure the payment of wages due is illegal, see *Samuel Hertzig Corp.* v. *Gibbs,* 295 Mass. 229; *Sullivan* v. *Barrows,* 303 Mass. 197; *Dorchy* v. *Kansas,* 272 U. S. 306; *Jensen* v. *St. Paul Moving Picture Machine Operators Local Union No. 356,* 194 Minn. 58, yet whether the plaintiff was forced to pay the money through the coercive effect of the strike was a question of fact with the burden of proof resting upon it. *Rosenbloom* v. *Kaplan,* 273 Mass. 411. *Freeman* v. *Teeling,* 290 Mass. 93. The master made no finding on this question, although it was his plain duty to do so. *Lindsay* v. *Swift,* 230 Mass. 407. *Adams* v. *Whitmore,* 245 Mass. 65. On an appeal from a final decree, based upon the report of a master without any report of the evidence heard by him, this court draws its own inferences from the facts found by the master without giving weight to the decree. *Wasserman* v. *Hollidge,* 267 Mass. 460. *Arcisz* v. *Pietrowski,* 268 Mass. 140. *Kenney* v. *Blackman,* 282 Mass. 268.

The agreement of April 27, 1940, which the plaintiff now seeks to cancel, contained a provision "that the parties will confer relative to negotiating a new collective agreement covering culinary employees of Cappy's, Inc." Although it required merely a conference and the exercise of good faith in an effort to reach a mutually satisfactory working agreement, and did not require the plaintiff to execute a closed shop contract, yet on May 13, 1940, more than two weeks after the strike had terminated, the plaintiff made such a contract. It makes no contention but that it freely and voluntarily entered into this contract. The seeds of that contract were sown in the agreement of April 27, 1940, and two weeks later, as a result of the joint action and cooperation of the plaintiff and the union, a closed shop agreement was executed. This was the second contract of that kind that the plaintiff had executed. The findings of the

master clearly imply that at no time were there any substantial differences between the parties in reference to a closed shop or that the plaintiff had any objection to it. The efforts of the union to secure a closed shop cannot be regarded as duress when the plaintiff, in its own judgment, was willing to make that arrangement with the union.

The plaintiff attacks only that portion of the agreement of April 27, 1940, that provides for the payment of $1,000 to the union. The plaintiff, from the beginning, had the services of an attorney who was a near relative of Kaplan. If the union was engaged in an illegal strike the plaintiff had a legal remedy. At that time there were no contractual relations between the plaintiff and the union. Instead of seeking redress in the courts, Kaplan, accompanied by the plaintiff's attorney, went to the office of counsel for the union, succeeded in reducing the amount of the claim for back wages, and settled the strike by executing the agreement that it now seeks to set aside. It follows from the findings of the master, setting forth the circumstances attending the execution of this agreement, that Kaplan, acting for the plaintiff and guided by the aid of counsel, decided that the proper course to pursue was to adjust the claim for back wages and make a new collective bargaining agreement with the union. The making of this agreement is not shown to have been tainted by duress. *Lajoie* v. *Milliken,* 242 Mass. 508. *Richardson* v. *Brown,* 260 Mass. 509. *Freeman* v. *Teeling,* 290 Mass. 93. *Carey* v. *Fitzpatrick,* 301 Mass. 525.

We need not decide whether, if this agreement were voidable on account of duress, the plaintiff would be barred from relief by its subsequent action tending to show ratification and confirmation of the agreement, see *Silsbee* v. *Webber,* 171 Mass. 378; *Webb* v. *Lothrop,* 224 Mass. 103; *Rosenbloom* v. *Kaplan,* 273 Mass. 411; nor need we decide whether the plaintiff owed any back wages. See *Benson* v. *Monroe,* 7 Cush. 125; *Regan* v. *Baldwin,* 126 Mass. 485; *Rosenfeld* v. *Boston Mutual Life Ins. Co.* 222 Mass. 284; *Carey* v. *Fitzpatrick,* 301 Mass. 525; and *Hinckley* v. *Barnstable,* 311 Mass. 600.

*Interlocutory decrees affirmed.*
*Final decree affirmed.*