Fremont-Smith, Thayer, J.
Based upon all of the credible evidence at the jury-waived trial, the Court finds and rules as follows.
Barry Ward (“Barry”) is the record title owner of the real estate located at 12-14 Dexter Street, Medford, Massachusetts and a police officer with the Belmont Police Department. Frank Ward (“Frank”) is Barry’s brother and has a long history of drug abuse. Mary J. Mathews (“Mary”) is the sister of both Barry and Frank.
On or about April 1, 2001 Mary and Frank entered into an agreement to assist Frank upon his return from a thirty-day court-ordered rehab at Bridgewater State Hospital. Frank had recently received money from an inheritance. The 2001 Agreement called for Frank to pay $22,000 to Mary to live rent-free in the basement of 12-14 Dexter Street, Medford, Massachusetts as long as Mary owned the property. If the house were to be sold between March 1, 2001 and March 1, 2007, then Mary was to repay Frank his $22,000 with interest.
By late 2003, Mary (who had been struggling with substance abuse herself) was in serious financial trouble and foreclosure proceedings had been instituted against the real estate. At that time, Frank continued to reside at the property.
On March 9, 2004, Barry entered into a purchase and sale agreement with his sister, Mary, to purchase the real estate, and Mary conveyed the property to Barry by deed dated April 27, 2004 for $470,000. At the time of the closing, both Barry and Mary knew that Frank’s attorney had placed a lien for $25,892 on the property to secure Frank’s recovery of a judgment against Mary which he had obtained in the Somerville District Court to enforce the April 1, 2001 agreement.
On April 8, 2004 Frank called Barry to request a gift of money from him (as he had done frequently in the past). Barry told Frank to meet him at the Belmont Police Station, where Barry was working as a police officer. Frank arrived at the Belmont Police Station by taxi. As Barry had been made aware that Frank’s lawyer had attached the property to secure Mary’s payment to Frank under the agreement of April 1, 2001, Barry drafted a release which he insisted Frank sign before he would give him any additional money. Frank signed a document (the “release”) which states:
I, Frank Ward, do hereby [sic] state that I am releasing a $25,000 lien that I had my Attorney place on the property located at 12-14 Dexter Street in Medford Massachusetts. I realize that my Brother Barry Ward is purchasing this home and I want the transaction to go without delays. The lien that I had placed on the property is in [sic] issue between me and my sister Mary Ward. I reserve my right to pursue my claim against my sister independent of this lien.
Frank now claims that this document was signed as a result of Barry's duress, fraud and undue influence.
At the trial, Frank testified (essentially as he had stated in his answers to interrogatories which were received in evidence) that, on the day in question, he called Barry to tell him he was homeless and had no money; that Barry told him to take a cab to meet him at the Belmont Police Station and he would loan him $100; that when he arrived, Barry told him he would not give him the money unless he signed a release of the real estate attachment which Barry had drafted; and that he signed the release and took the money (which Barry testified was $200 rather than $100) under duress because he owed a fare to the waiting taxi driver and had no other way to return home except by cab. He testified that Barry had not told him when they had talked on the telephone that there would be any condition placed upon Barry’s provision of money to him.
It is settled that a person whose will and judgment are overcome by threats, fear or some other influence, and who is thereby compelled to execute a contract that he would not have made in the free exercise of his will and independent judgment, may avoid the contract on the ground of duress. Cappy’s, Inc. v. Frank Dorgan & others, 313 Mass. 170 (1943).
The Appeals Court, in International Underwater Contractors, Inc. v. New England Telephone and Telegraph Co., 8 Mass.App.Ct. 340 (1979), however, has discussed at length the requirements for proof of economic duress. It said (at 342):
To show economic duress (1) a party “must show that he has been the victim of a wrongful or unlawful act or threat, and (2) such act or threat must be one which deprives the victim of his unfettered will.” 13 Williston, Contracts §1617, at 704 (3d ed. 1970). “As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values.” Id.
The dements of economic duress have also been described as follows: “(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party.” Urban Plumbing & Heating Co. v. United States, 408 F.2d 382, 389 (Ct. Cl. 1969), cert. denied, 398 U.S. 958 (1970), quoting from United States v. Bethlehem Steel Corp., 315 U.S. 289, 301 (1942). “Merely taking advantage of another’s financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.” 13 Williston, supra §1617, at 708. Thus “[i]n order to substantiate the allegation of economic duress or business compulsion . . . [t]here must be a showing of acts on the part of the defendant which produced [the financial embarrassment]. The assertion of duress must be proved by evidence that the duress resulted from defendant’s wrongful and oppressive conduct and *436 not by plaintiffs necessities.” W.R. Grimshaw Co. v. Neuil C. Withrow Co., 248 F.2d 896 (8th Cir. 1957).
The Court finds that, in this case, any economic coercion under which Frank labored was not caused by Barry, but was the result of Frank’s impoverished predicament which resulted from his long-standing drug addiction and lack of employment. His desperation for another hand-out from Barry was not the result of Barry’s actions. Nor was any fraud by Barry proven.
As for the allegation of undue influence, while it is frequently invoked by a plaintiff against another person who is alleged to have deprived plaintiff of property of which the plaintiff claims to have been the ifttended beneficiary, the Court is aware of no case where it has been invoked, as here, by the recipient of money to void a release provided in consideration thereof. In any event, the Court finds that Barry exerted no undue influence distinct from the duress alleged here.
Nor was there shown to be inadequate consideration for the release. To constitute consideration sufficient to establish an enforceable contract, there must be either a benefit to the promisor or a detriment to the promisee. Loranger Constr. Corp. v. E.F. Hauserman Co., 376 Mass. 757, 763 (1978); Marine Contractors Co. v. Hurley, 365 Mass. 280, 286 (1974). Where other wrongdoing, such as duress, is absent, a court does not assess the adequacy of the consideration. Consideration that is of some value, however slight, is sufficient. Barnett v. Rosen, 235 Mass. 244, 249 (1920) (“It is enough that the consideration is valuable, it need not be adequate”).
Accordingly, the Court rules that the April 8, 2004 release of the lien on the property was not the result of fraud, duress or undue influence but was (as Frank admitted in his testimony) his “free act and deed.”
Finally, Frank alleges by way of counterclaim, a consumer protection violation against Bariy due to the circumstances of his obtaining the release. Not only was the relationship between Frank and Barry familial and the transaction of a private nature motivated by personal reasons, see Lantner v. Carson, 374 Mass. 606, 610, 611 (1978), and Begelfer v. Najerian, 381 Mass. 177, 191 (1980), but the Court finds that no unfair or deceptive act by Barry was proven.
ORDER FOR FINAL JUDGMENT
For the above reasons, the Court declares that the execution against the property which was recorded in the Middlesex Registiy of Deeds against properly standing in the name of Mary J. Mathews is hereby DISCHARGED. Frank Ward and the other defendants are enjoined and prohibited from executing on the said property in satisfaction of Frank’s judgment in the Somerville District Court against Mary.[1]
Final judgment shall be entered in favor of the plaintiff Barry Ward on his action against the defendants and in his favor and against the defendants on the counterclaim.

The Court finds that the Somerville District Court judgment against Maiy was valid, as Mary did agree to the judgment, but that the judgment is not enforceable against the property because of the release provided by Frank.